COMMONWEALTH *vs*. JACK ALTON HARRIS.

Middlesex.    June 7, 1976. — December 15, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, WILKINS, & LIACOS, JJ.

*Evidence,* Admissions and confessions. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Practice, Criminal,* Exceptions: failure to save exception; Voluntariness of confession. *Search and Seizure,* Affidavit.

At the trial of indictments charging murder in the first degree and armed assault with intent to rob, where the defendant testified that he confessed to the police only after having been beaten by them, the judge was required, independent of a request by defense counsel or the prosecution, to conduct a voir dire on the voluntariness of the confession, and his failure to do so constituted reversible error. [467-474]

Where it appeared that a search warrant and supporting affidavit had been lost subsequent to the original trial of a defendant whose conviction was reversed, in the event of retrial, the Commonwealth would be charged with the unexplained loss and bear the burden of showing that sufficiently reliable information was contained in the affidavit to support a finding of probable cause. [474-476]

At a trial of indictments charging murder in the first degree and armed assault with intent to rob, the defendant's response, after his arrest, to a police officer's question as to whether certain rifles belonged to him, which was described as "hanging his head" and "biting his lip," could not properly be regarded as nontestimonial admissions demonstrating a consciousness of guilt, nor did it constitute an equivocal response to an accusation of guilt. [476-477]

INDICTMENTS found and returned in the Superior Court on September 10, 1962.

The cases were tried before *Goldberg, J.*

*Margaret D. McGaughey* for the defendant.

*Bonnie H. MacLeod-Griffin,* Assistant District Attorney, for the Commonwealth.

LIACOS, J.   The defendant was found guilty by a jury on indictments charging murder in the first degree (G. L. c. 265, § 1) and armed assault with intent to rob (G. L. c. 265, § 18). He was sentenced to death on the murder charge. After his trial, which occurred in January, 1964, the defendant filed a claim of appeal, but no further action was taken on it. However, in March, 1975, a consent decree was entered before a single justice of this court vacating the sentence of death (with the trial court directed to resentence the defendant to life imprisonment) and allowing the defendant full rights of appeal under G. L. c. 278, §§ 33A-33H. His appeal is now before us on that basis.

On appeal, the defendant claims that the following constitute reversible error: (1) the trial judge's failure to provide a voir dire hearing and judicial ruling on the admissibility of the confession and his failure to instruct the jury properly on the issue of voluntariness after evidence had been introduced that the defendant had been beaten by the police prior to making a confession; (2) the trial judge's failure to exclude that confession from evidence; (3) the admission of certain evidence produced by

a search of the defendant's apartment pursuant to an allegedly inadequate search warrant; (4) the admission of certain testimony that the defendant had refused to answer the police when they questioned him after he had been arrested; (5) the trial judge's failure to instruct the jury on the elements of the underlying felony necessary to support conviction on a felony-murder theory; and (6) the ineffectiveness of trial counsel. Finally, the defendant argues that, even if we should find no legal error in the proceedings below, we should exercise our powers under G. L. c. 278, § 33E, and either direct a verdict of not guilty or enter a verdict of guilty to a lesser offense than murder in the first degree. We conclude that the trial judge's failure to order a voir dire hearing and properly to instruct the jury on the voluntariness of the defendant's confession constitutes reversible error. We state the evidence relevant to the issues considered herein.

On the night of July 21, 1962, three gunmen entered a bunkhouse in Lexington, Massachusetts, where the victim and twelve other migrant farm workers were sleeping. The victim was mortally shot. Police who arrived on the scene shortly thereafter found that the farm workers spoke only Spanish. At that hour, the police could produce an interpreter who spoke only Italian and English. Nevertheless, the police felt they gathered enough information to put out a radio alert for three men.

On July 23, four Puerto Rican suspects were arrested by the police. After they were interrogated for approximately five hours they were released. One of these suspects then accompanied two police officers to the South End of Boston looking for an individual named Hector Vieira. Sometime later the police located Vieira. They arrested him on the basis of an outstanding warrant in New Bedford on an unrelated matter and took him to the police station for questioning. Vieira told the police that guns were concealed under the floor of a closet in apartment 2 of 31 Concord Square, Boston. Vieira also told them that a man named Jack Harris had committed the murder at the bunkhouse. Vieira gave the police a description of Harris.

On the basis of the information received from Vieira, a person previously unknown to the police, eleven plainclothes policemen went to 31 Concord Square and stationed themselves at various points around the apartment building. Three of the officers then went to the home of a judge of the Municipal Court of the City of Boston and obtained a warrant to search apartment 2 and to arrest anyone found inside.[1]

When these three officers returned to 31 Concord Square, they entered apartment 2 (which was unlocked) after knocking and receiving no answer. The police found a young woman, later identified as the defendant's girl friend, asleep in bed. After she was taken upstairs to another apartment the police ripped up the closet floor and wall paneling and found two rifles, a revolver, a mask and certain other items. No fingerprints were found on any of these articles.

Shortly thereafter (around 10:30 P.M.), one of the officers noticed a black male, who fit the description given the police by Vieira, walking down the street at a "normal pace." The police testified that after this man entered 31 Concord Square he saw one of the officers standing in an unlighted doorway, turned, jumped down six steps and began to run back toward the street. The police testified that they soon apprehended the man, later identified as the defendant, and placed him under arrest.

One of the policemen, an Officer Gavin, testified that he twice asked the man why he had run away from the police. Both times the man refused to answer. He was asked his name and replied that it was Jack Harris. The police took Harris back to 31 Concord Square and there asked him whether the rifles belonged to him. Officer Gavin testified that Harris "bit his lip and hung his head, but made no verbal reply." At this point the defendant had not been advised of his rights.

---

[1] The warrant and supporting affidavit were available at trial. It appears that both the warrant and the affidavit have been lost since, while in the custody of court officials. See part 2 of this opinion, *infra.*

The defendant's version of the arrest was substantially different. He testified that he had been talking to two persons in a car parked on the street when a man in civilian clothing came up to him, brandishing a gun, and asked if he was "Fernandez." The defendant responded that he was Jack Harris; he was then placed under arrest.

The police and the defendant arrived at Boston police headquarters in a police van around 11 P.M. The defendant was questioned by a variety of Boston and Lexington police officers. The police testified that, within an hour and one-half, the defendant admitted his participation in the holdup, but stated that one Fernandez, not he, had killed the farm worker. The defendant was not asked to write out his confession. Instead, the police brought in two stenographers to record two separate statements. These statements, which were read to the jury at trial, were in a question and answer format. Both statements contained responses by the defendant that he had confessed freely and that he had been advised of his rights, including a warning that the statements could be used against him in court. Shortly after these statements were recorded the defendant was put in a lineup, but no identification resulted. Although Vieira was still being held at police headquarters, the defendant was not confronted with him.

The police further testified that the defendant willingly agreed to recreate the crime. The police testified that, on the way to Lexington that same night and while there, the defendant made numerous statements about the crime. When the defendant and the police arrived at the bunkhouse, the police woke up the farm workers and asked them to identify the defendant. None of the workers made an identification. The defendant was returned to Boston and placed in jail.

The defendant's testimony about the police questioning was almost totally at variance with that of the officers. The defendant testified that he had been handcuffed and that he generally refused to answer questions. He stated that, about ninety minutes after the questioning commenced, the police began to beat him between the legs and on his

side with a "flexible" object. The defendant told the jury that eventually he started to talk after becoming dizzy and being "tired of being beaten on." He stated that he could remember neither the questions he was asked nor his answers, but that his answers seemed to satisfy the police. The defendant did agree with the police that he had gone with them to Lexington, but disputed their assertion that he had done so willingly.

At no time did the police testify in rebuttal to any of the defendant's statements. The testimony of the police was neither objected to nor excepted to by the defendant's trial attorney. Furthermore, that attorney did not move to suppress or exclude the defendant's confession; nor did he request that the trial judge hold a voir dire on the issue of voluntariness either before or during the trial. The confession was admitted without a finding by the judge that it was voluntarily made. The judge was not requested to instruct the jury on the issue of voluntariness and he did not do so on his own initiative.

The Commonwealth produced only one eyewitness to the crime despite the fact that there had been thirteen farm workers in the bunkhouse when the killing occurred. This witness testified that, although he was awakened by the entry of the three men, he did not see the killing occur.

The defendant's defense was alibi. Five witnesses called by the defendant corroborated his position that he was in Boston during the day of the crime. There was also testimony that the defendant vacated his apartment a few days before the crime and that seven or eight other individuals had access to the keys to apartment 2 during that period. Finally, several of the defense witnesses testified that, at all times since the defendant had moved into apartment 2, one of the closets in which the police discovered the weapons had been nailed shut.

1. *Failure of the trial judge to hold a voir dire hearing, properly to rule on the admissibility of the confession and to instruct the jury on the issue of voluntariness.* It long has been the law of this Commonwealth that an involuntary or coerced confession is inadmissible in the trial of a

criminal defendant. "[C]onfessions made by a party ac-
cused, under promises of favor, or threats of injury, are
excluded as incompetent." *Commonwealth* v. *Morey,* 1
Gray 461, 462 (1854). See *Commonwealth* v. *Valcourt,*
333 Mass. 706 (1956); *Commonwealth* v. *Hudson,* 185
Mass. 402 (1904); *Commonwealth* v. *Myers,* 160 Mass. 530
(1894); *Commonwealth* v. *Preece,* 140 Mass. 276 (1885).
Although our rule of exclusion traditionally has been based
on the unreliability of such a confession, coerced or invol-
untary confessions are also repugnant to the due process
clause of the Fourteenth Amendment to the United States
Constitution. See *Haynes* v. *Washington,* 373 U.S. 503
(1963); *Rogers* v. *Richmond,* 365 U.S. 534 (1961); *Leyra*
v. *Denno,* 347 U.S. 556 (1954); *Malinski* v. *New York,* 324
U.S. 401 (1945); *Lyons* v. *Oklahoma,* 322 U.S. 596 (1944);
*Lisenba* v. *California,* 314 U.S. 219 (1941); *Brown* v. *Mis-
sissippi,* 297 U.S. 278 (1936). The primary rationale for
Fourteenth Amendment exclusion is not simply that such
confessions are necessarily unreliable. "The aim of the
requirement of due process is . . . to prevent fundamental
unfairness in the use of evidence, whether true or false."
*Lisenba* v. *California, supra* at 236. See also *Watts* v. *In-
diana,* 338 U.S. 49, 54 (1949). "It is now axiomatic that a
defendant in a criminal case is deprived of due process of
law if his conviction is founded, in whole or in part, upon
an involuntary confession, without regard for the truth or
falsity of the confession . . . [citation omitted], and even
though there is ample evidence aside from the confession
to support the conviction." *Jackson* v. *Denno,* 378 U.S. 368,
376 (1964).

At least since the Supreme Court's decision in *Jackson*
v. *Denno, supra* (decided after the trial of this case), it
has been a requirement of the Fourteenth Amendment due
process that, when it appears that a confession has been
coerced or made involuntarily, the trial judge must conduct
a voir dire to determine whether the confession was in fact
made involuntarily. "[I]t is only a reliable determination
[by the judge] on the voluntariness issue which satisfies

the constitutional rights of the defendant and which would permit the jury to consider the confession in adjudicating guilt or innocence." *Id.* at 387.

Thus, a trial judge has a constitutional obligation to conduct a voir dire examination in the absence of the jury where the voluntariness of a confession is in issue and to make an affirmative finding of voluntariness before the jury are allowed to consider it.

"The overall determination of the voluntariness of a confession has thus become an exceedingly sensitive task, one that requires facing the issue squarely, in illuminating isolation and unbeclouded by other issues and the effect of extraneous but prejudicial evidence." *Id.* at 390.

Our own practice, antedating *Jackson* v. *Denno, supra,* and acknowledged therein to afford a defendant protection in accord with Federal constitutional requirements, has been that an accused may "require of the judge a decision of the competency of the . . . [confession]; and, even after the judge has decided the evidence to be competent, the [accused] has the right to ask of the jury to disregard it, and to give no weight to it, because of the circumstances under which the confession [was] obtained." *Commonwealth* v. *Culver,* 126 Mass. 464, 466 (1879).

Massachusetts practice dictates that three requirements be met where there is a question raised as to the voluntariness of a confession offered by the prosecution. There must be (1) a voir dire hearing on the issue of voluntariness conducted by the judge in the absence of the jury; (2) a ruling that the confession is voluntary before it may be considered by the jury; and (3) a jury reconsideration of the issue of voluntariness under proper instructions should the confession be admitted.

"When a confession is offered in evidence, the question whether it is voluntary is to be decided primarily by the presiding justice. If he is satisfied that it is voluntary, it is admissible; otherwise, it should be excluded.

"When there is conflicting testimony, the humane practice in this Commonwealth is for the judge, if he decides

that it is admissible, to instruct the jury that they may consider all the evidence, and that they should exclude the confession, if, upon the whole evidence in the case, they are satisfied that it was not the voluntary act of the defendant." *Commonwealth* v. *Preece,* 140 Mass. 276, 277 (1885).

This "humane practice" antedates the Federal constitutional requirements discussed above. The question for decision here, however, is whether the judge in this case erred by failing to follow that practice sua sponte after testimony making out a substantial claim of involuntariness was adduced at trial.

The Commonwealth argues that a judge need not follow our established practice unless a defendant moves to suppress, requests a voir dire or objects to the admission of his statements. The defendant's failure to do this at trial is, in effect, characterized by the Commonwealth as a waiver of our procedures.[2] We cannot agree. We believe that, in the circumstances of this case, the trial judge's failure to conduct a voir dire, to make the necessary ruling

---

[2] The Commonwealth places substantial reliance on our decision in *Commonwealth* v. *Harris,* 364 Mass. 236 (1973), for this proposition. This reliance is misplaced. It is true that we stated therein: "The Appeals Court ruled that . . . the trial judge was under no obligation to make a finding of voluntariness, since no one raised the issue before him, and that the issue could not be raised for the first time on appeal. We agree with those rulings." *Id.* at 241. However, *Harris* is distinguishable in a number of critical respects. First, the statement made there was not a confession of guilt but a prior statement of alibi, inconsistent with the alibi story presented at the trial and offered solely for purposes of impeachment. Second, when the defendant was first asked about his conversation with the police, the trial judge "interrupted the examination and ordered [sua sponte] a voir dire." *Id.* at 237. Third, the trial judge in that case ruled that although the prior statement had been obtained without compliance with the procedural safeguards of *Miranda* v. *Arizona,* 384 U.S. 436 (1966), it was admissible for the limited purpose of impeachment under the doctrine of *Harris* v. *New York,* 401 U.S. 222 (1971). The defendant's testimony in that case negated any theory of coercion or involuntariness, and we clearly restricted the use of statements admitted for the limited purposes of impeachment to those shown to be voluntary within the principles of *Harris* v. *New York, supra.* Obviously, a statement offered for the powerful probative effect of a confession, as here, could require no lesser standard of admissibility.

and to instruct the jury properly on the issue of voluntariness on his own motion constitutes reversible error.[3]

It is true that our normal practice would preclude review of claims of erroneous rulings by the trial judge where counsel fails to make proper objection and take proper exception. *Commonwealth* v. *Underwood,* 358 Mass. 506, 509 (1970). This rule of procedure stems from the necessity of placing an affirmative obligation on trial counsel to inform both the trial court and subsequent courts of review of alleged error in the admission of evidence at the earliest possible time and in the most direct manner. Furthermore, since "[i]t is not uncommon for a lawyer to forego the exercise of such a right as part of the trial tactics or strategy being employed for his client," *Commonwealth* v. *Underwood, supra* at 510, this court cannot be put in a position of giving defense counsel the benefit of hindsight and in effect allowing the opportunity to compensate for erroneous, but conscious strategic, decisions. However, we may disregard such a failure in order to prevent a "substantial risk of a miscarriage of justice." *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). While such

---

[3] Our position in this case is not inconsistent with our prior decisions that confessions are deemed "prima facie voluntary." See *Commonwealth* v. *Beaulieu,* 333 Mass. 640, 655, cert. denied sub nom. *Weaver* v. *Massachusetts,* 351 U.S. 957 (1956), and cases cited therein. This principle places the burden of coming forward with evidence of involuntariness on the defendant to raise the issue, a burden which the defendant amply satisfied here. Should the defendant fail to raise the issue or affirmatively concede the voluntariness of his confession, a different result would follow. Cf. *Commonwealth* v. *Pratt,* 360 Mass. 708 (1972); *Commonwealth* v. *Johnson,* 352 Mass. 311 (1967), cert. dismissed, 390 U.S. 511 (1968). We note that in both *Pratt* and *Johnson* a voir dire was held by the trial judge who made an affirmative determination of voluntariness, and our holding in each case was that failure to submit the issue of voluntariness to the jury was not error in view of the fact that neither defendant disputed the finding of voluntariness before the jury.

Further, while *Jackson* v. *Denno,* 378 U.S. 368 (1964), subsequently acknowledged to be retroactive (see our discussion of *Jackson, infra* at 473-474), requires a voir dire and a judicial finding of voluntariness, it does not necessarily require a jury consideration of the issue. Our practice does require jury reconsideration, however, whenever credible evidence of involuntariness is put before the jury as was done here.

instances are rare, *Commonwealth* v. *Fields, ante,* 274 (1976), we believe that in this case, in light of the powerful probative effect of a confession, the long-standing Massachusetts practice described in this opinion, the requirements of due process of law and affirmative evidence on involuntariness which was developed at trial, cf. *Commonwealth* v. *Masskow,* 362 Mass. 662, 667 (1972), the interest of the State in preventing a substantial risk of injustice outweighs the interests described above. Cf. *Henry* v. *Mississippi,* 379 U.S. 443 (1965). Further, we are not unmindful of the fact that the defendant's procedural default in this case would not prevent his ultimate and probable release on a writ of habeas corpus, *Fay* v. *Noia,* 372 U.S. 391 (1963), a result which is both undesirable and avoidable in the instant case. Cf. *Commonwealth* v. *Masskow,* 362 Mass. 662, 667-668 (1972).

"The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure and wherever [a] court is clearly satisfied that such violations exist, it will refuse to sanction such violations and will apply the corrective." *Brown* v. *Mississippi,* 297 U.S. 278, 287 (1936), quoting from *Fisher* v. *State,* 145 Miss. 116, 134 (1926). Furthermore, " 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and . . . 'do not presume acquiescence in the loss of fundamental rights.' " *Johnson* v. *Zerbst,* 304 U.S. 458, 464 (1938). We believe that where, as here, testimony has been given that a defendant has confessed to the police only after having been beaten by them, a trial judge has a responsibility — independent of a request by defense counsel or the prosecution — immediately to order a voir dire on the voluntariness of that confession.[4] See

---

[4] Merely allowing the confession in evidence without a voir dire is not sufficient compliance with our rule or the dictates of *Jackson.* "*Jackson* v. *Denno* . . . requires a trial court to rule that statements to police officers were voluntarily made before they are submitted to the jury. The court's 'conclusion that the confession is voluntary must appear from the record with unmistakable clarity.' " *Eisen* v. *Picard,* 452 F.2d 860, 863 (1st Cir. 1971). See *Amado* v. *Commonwealth,* 349 Mass. 716 (1965).

*Commonwealth* v. *Masskow, supra* at 667. We also believe that, had the trial judge in this case found the confession to have been given voluntarily, he had a similar responsibility under our long-established practice to instruct the jury appropriately. We find this responsibility grounded in three sources: our traditional and long-standing practice; the forceful language of the Supreme Court's pre-*Jackson* decisions; and the indication, for purposes of this case, that *Jackson* is to be applied retroactively. We shall discuss these briefly and in order.

First, as we have pointed out, our practice dates back at least to the middle of the Nineteenth Century. See *Commonwealth* v. *Morey,* 1 Gray 461 (1854). We believe that a trial judge in 1964 should have been on notice as to both the potential unreliability of a coerced confession and the almost conclusive effect of any defendant's confession on a jury. Furthermore, there was Massachusetts precedent available at the time of the defendant's trial indicating that a judge could take such steps on his own initiative. See *Commonwealth* v. *Sheppard,* 313 Mass. 590, cert. denied, 320 U.S. 213 (1943). Additionally, there was Massachusetts precedent available where a voir dire had been held despite "no evidence or hint of physical coercion." See *Commonwealth* v. *Makarewicz,* 333 Mass. 575, 585 (1956).

Second, the existence of the Federal decisions previously cited and the due process requirements of reversal where a coerced confession was found on appeal to be improperly admitted, see *Malinski* v. *New York,* 324 U.S. 401 (1945); *Lyons* v. *Oklahoma,* 322 U.S. 596 (1944), must be deemed to have been sufficient notice to a pre-*Jackson* trial judge that allegedly coerced confessions were to be scrutinized with the greatest care before their admission or, if already admitted, when the evidence of coercion first appeared.

Finally, and alternatively, we note that in *Jackson* v. *Denno* itself the Supreme Court gave at least partial retroactive effect to the rule formulated therein, and has since acknowledged that *Jackson* is retroactive. See *Johnson* v.

*New Jersey,* 384 U.S. 719, 729 (1966).[5] Thus, we may also reach our result on the basis that *Jackson* requires a new trial here.[6] The constitutional mandate of *Jackson* reaches only to the requirement of a voir dire and a prior determination of voluntariness before a confession is admitted in evidence. *Lego* v. *Twomey,* 404 U.S. 477 (1972). As we have already noted, the requirement of jury consideration of the same issue is not required by the decision in *Jackson* but is required by long-established Massachusetts practice. See *LaFrance* v. *Bohlinger,* 499 F.2d 29 (1st Cir.), cert. denied sub nom. *LaFrance* v. *Meachum,* 419 U.S. 1080 (1974). Since no determination as to the voluntariness of the confession was made by the trial judge here, the constitutional rule would require reversal without regard to whether or not the jury were given the issue to decide. Indeed, that is the precise holding of *Jackson* and of our decision in the related case of *Harris* v. *Commonwealth, post,* 478 (1976).

We turn now to a discussion of those questions raised on this appeal which may be of import in the event of a retrial.[7]

---

[5] "We gave retroactive effect to *Jackson* v. *Denno* . . . because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy . . . ." 384 U.S. at 729.

[6] It is true that under *Jackson* we might limit relief, at least initially to a voir dire hearing. No more is required by the Federal Constitution. See 378 U.S. at 394. But, for the reasons put forth by a dissenting Justice in *Jackson* (see *id.* at 409-410 [Black, J., dissenting in part]), and because of the substantial passage of time between the original trial and the appeal in this case, as well as other issues not properly ruled on at the first trial, we feel that the defendant should be afforded a complete new trial. We note that, at least to some extent, the Supreme Court's adoption of alternative remedies in *Jackson* was influenced by considerations of comity: "[t]he proper relationship between federal and state courts." *Id.* at 395. Those considerations are, of course, not present here.

[7] Consequently, we shall not discuss: whether the defendant's confession should have been suppressed at trial; whether the defendant's trial counsel was ineffective; and whether it was error for the trial judge to fail to instruct the jury on the elements of the felony required for conviction on a felony-murder theory. Our reversal also makes review of this case under G. L. c. 278, § 33E, unnecessary.

Commonwealth *v.* Harris.

2. *The search warrant issue.* The defendant argues that the search warrant was inadequate because "the information available to the police [Vieira's uncorroborated statements] did not amount to probable cause to search." No suppression hearing was requested by the defendant's trial counsel or held at trial; however, we assume that such a hearing will be requested in the event of retrial.

At the time the search warrant was issued (July 23, 1962), the leading Supreme Court cases relevant to the question of reliance on an informer to establish probable cause were *Draper* v. *United States,* 358 U.S. 307 (1959), and *Giordenello* v. *United States,* 357 U.S. 480 (1958), which, we believe, furnish adequate guidance for determination of that issue in the event of retrial. See also *Mapp* v. *Ohio,* 367 U.S. 643 (1961). However, it appears that both the search warrant and the supporting affidavit have been lost since the original trial.[8] We think that, if the warrant and supporting affidavit cannot be produced for retrial, the Commonwealth must be charged with the unexplained loss of those documents,[9] and must bear the burden of showing that there was sufficiently reliable information contained in the affidavit to support a finding of probable cause.[10]

Should a suppression hearing at retrial result in a find-

---

[8] All that now appears available is a certified copy of the log which indicates the warrant was issued and the return thereon made.

[9] See G. L. c. 221, § 14, which provides that clerks of the various courts "shall have the care and custody of all the records, books and papers which pertain to, or are filed or deposited in, their respective offices."

[10] The determination of the validity of the warrant and affidavit, in so far as it may turn on statutory rather than constitutional considerations then applicable, should be made within the framework of the statutory scheme in effect when the warrant was issued in July, 1962. See G. L. c. 276, as amended by St. 1963, c. 96. The various modifications of G. L. c. 276 made by St. 1964, c. 557, took effect not only after the search but after the trial of January, 1964. The Commonwealth ought not to be charged with statutory requirements now extant but not in existence at the times relevant to this case. See especially G. L. c. 276, §§ 2A, 2B, inserted by St. 1964, c. 557, § 3.

ing that the search warrant was invalid, either because the affidavit was inadequate or because the Commonwealth cannot meet its burden, issues may arise as to the admissibility of photographs subsequently taken by the police, the validity of the defendant's arrest (which may have been "fruits" of that warrant), and whether the defective warrant vitiated the defendant's subsequent statements and confession to the police. See generally *Wong Sun* v. *United States,* 371 U.S. 471 (1963), refining the rules enunciated in *Nardone* v. *United States,* 308 U.S. 338 (1939), and *Silverthorne Lumber Co.* v. *United States,* 251 U.S. 385 (1920). The resolution of such issues, if raised, requires factual determinations by a trial judge as well as proper application of the relevant constitutional principles. We note that the illegality of a search or an arrest may present such issues.[11] Whether suppression would be required of any or all of the evidence seized or obtained on a "fruits" theory is not a question that can be resolved on this record. The relevant principles in this area have been outlined by us recently in *Commonwealth* v. *Fielding, ante,* 97, 113-115 (1976), and should be considered by the trial judge if such claims are raised in the event of retrial.

3. *Testimony as to the defendant's failure to respond to police questioning after his arrest.* There is no dispute between the defendant and the Commonwealth over the inadmissibility, at the time of the defendant's trial, of an arrested suspect's failure to respond to police questioning. See *Commonwealth* v. *Wallace,* 346 Mass. 9 (1963); *Commonwealth* v. *Anderson,* 245 Mass. 177 (1923). However, the Commonwealth argues that the defendant's flight from the officers and their description of his hanging his head and biting his lips "could properly be regarded as nontestimonial admissions demonstrating a consciousness of guilt." The Commonwealth relies on *Commonwealth* v. *Montecalvo,* 367 Mass. 46 (1975), as support for its posi-

---

[11] The defendant raises such issues in his brief, and may be anticipated to pursue such arguments in the event of retrial.

tion that testimony to that effect and for that purpose properly could have been received in evidence.

We note that there was no exception taken below to the admission of this evidence. Nor did the trial judge charge the jury as to the defendant's Fifth Amendment right to remain silent after being taken into custody. But we disagree with the Commonwealth's characterization of the defendant's failure to respond and its total reliance on *Montecalvo, supra.* There the statements properly admitted in evidence were not made after the defendant had been taken into custody or placed under arrest. Rather, they were prior to his arrest and were made on his own initiative; they consisted of his frequent calls to a friend of the victim's mother which permitted the inference that the defendant's inordinate interest in the victim's condition demonstrated a "consciousness of guilt on ... [his] part." 367 Mass. at 52. On its facts *Montecalvo* is clearly distinguishable from the case before us and reliance on it is misplaced, at least as to the defendant's failure to respond. Nor is "hanging his head" and "biting his lips" to be viewed as an equivocal response in regard to an accusation of guilt or misconduct. Compare *Commonwealth* v. *Curry,* 341 Mass. 50 (1960). As to the problem of the defendant's flight from the police, however, see generally *Montecalvo, supra* at 52, and cases cited therein.

4. *Disposition.* The judgments rendered below are reversed and the verdicts set aside. The case is remanded for a new trial on either or both of the indictments should the Commonwealth decide to move for the same.

*So ordered.*