COMMONWEALTH *vs*. MOSES WILDER.

Suffolk.    September 12, 1984. — November 16, 1984.

Present: BROWN, KASS, & SMITH, JJ.

*Due Process of Law*, Disclosure of evidence. *Practice, Criminal*, Disclosure of evidence, Suppression of evidence by prosecutor, Preservation of evidence, Dismissal. *Rape*.

The defendant in a rape case was not entitled to dismissal of the indictment on the ground that the Commonwealth had failed to preserve potentially exculpatory evidence, the contents of a rape evidence kit held for some time in a hospital and subsequently destroyed, and clothing worn by the victim at the time of the incident and lost some time before trial, where there was no evidence that the contents of the rape evidence kit or the victim's clothing were ever in the possession of the prosecutor or of any governmental official or other person whose actions could be imputed to the Commonwealth. [783-784]

INDICTMENT found and returned in the Superior Court Department on February 11, 1982.

A motion to dismiss was heard by *Kelley*, J., and the case was heard by *Volterra*, J.

*Eric Brandt* for the defendant.

*Judy G. Zeprun*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendant has appealed from his conviction on an indictment charging him with statutory rape. G. L. c. 265, § 23. Prior to trial, the defendant filed a motion to dismiss the indictment on the ground that the Commonwealth had failed to preserve potentially exculpatory evidence. The defendant identified the lost evidence as the contents of a rape evidence kit and as clothing worn by the victim at the time of the incident. A Superior Court judge, after a hearing, denied the motion and filed a memorandum of decision that contained findings of fact in regard to the motion. We summarize the facts that were found by the judge.

The incident took place on December 30, 1981. Before notifying the police, the victim went to Carney Hospital for examination and treatment. The examination included the use of a rape evidence kit by hospital personnel. Certain items, including a sample of vaginal fluid prepared on a fixed slide and pubic hair combings obtained from the victim, were placed in the kit. No testing on these items was performed at the hospital. The hospital preserved the kit for four to six months after the examination and then destroyed the kit and its contents. The hospital did not have any procedure to notify the police whenever it had used a rape evidence kit.

The victim reported the incident to the police on the day after it occurred. Detective Green of the Boston police was placed in charge of the investigation. He learned that the victim had been treated at Carney Hospital but was not informed that a rape evidence kit had been used. In previous cases he had received notice from the examining hospital if it had made use of, and was holding the results of, a rape evidence kit. Routine police procedure required the police to obtain the kit from the hospital only if an officer had accompanied the victim to the hospital or if he had received notice of use of the kit. Neither of those events occurred here, and Detective Green never became aware that a rape evidence kit had been used until after its contents had been destroyed. Approximately a year after the incident the prosecutor assigned to the case noted a reference to pubic hair combings in the victim's hospital records. He requested the contents of the rape evidence kit from the hospital and was informed that the contents had been destroyed. He immediately notified defense counsel.

The victim kept possession of clothing which she wore at the time of the incident. She lost the clothing sometime before the trial. The police did not have possession of the clothing at any time. Routine police procedure did not require an investigating officer to obtain and preserve a rape victim's clothing.

The defendant argues that the contents of the rape evidence kit and the clothing of the victim were material and that their subsequent loss was "intensely prejudicial" because testing could have excluded the defendant as the guilty party. We need

not discuss whether the evidence was exculpatory because we agree with the motion judge that the Commonwealth or its agents were never in possession or control of the evidence.

In *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), the Court established "a prosecutorial duty to disclose to the defense evidence *in the prosecutor's possession* that is both material to the defendant's guilt or innocence and exculpatory" (emphasis supplied). See *Commonwealth* v. *Neal*, 392 Mass. 1, 7-8 (1984). There is no evidence that the contents of the rape evidence kit or the victim's clothing were ever in "the possession or control of the prosecutor or of any governmental official or other person whose actions could be imputed to the Commonwealth." *Commonwealth* v. *Mathews*, 10 Mass. App. Ct. 888 (1980). See *Commonwealth* v. *St. Germain*, 381 Mass. 256, 261 n.8 (1980). Indeed, the evidence is to the contrary. Without a showing of possession or control by the Commonwealth, the defendant's argument that the Commonwealth suppressed the evidence must fail. See *Commonwealth* v. *Pisa*, 372 Mass. 590, 596-597 (1977). Also see Mass.R.Crim.P. 14(a)(1)(c), 378 Mass. 874 (1979). We see no support in the record for the proposition urged by the defendant, that the hospital acted as agent for the Commonwealth. Compare *Commonwealth* v. *Storella*, 6 Mass. App. Ct. 310, 312-313 (1978).

The defendant argues that the Commonwealth was negligent in not establishing procedures which would prevent the loss of evidence. This ground for the dismissal of the indictment was not argued before the motion judge and, therefore, we will not consider it here. *Commonwealth* v. *Mandeville*, 386 Mass. 393, 408 (1982). *Commonwealth* v. *Ely*, 388 Mass. 69, 73 (1983). We note that both the United States Supreme Court and the Supreme Judicial Court have been reluctant to read the prosecutorial duty outlined in *Brady* v. *Maryland*, 373 U.S. at 87, "to extend, beyond the disclosure of evidence already in existence and in the prosecution's control, to the gathering of evidence potentially helpful to the defense." *Commonwealth* v. *Neal*, 392 Mass. at 8.

Finally, the defendant urges that this court require the Commonwealth to inform hospitals that when a rape evidence kit is

used, the Commonwealth must be notified and the contents of the kit preserved by the hospital. The defendant states that this requirement would enable the contents to be available to the defendant for testing purposes. Such a requirement, at least on its surface, makes sense. We leave it to the District Attorneys, if they have not already done so, to establish procedures whereby the contents of the rape evidence kits are preserved by the hospitals. It is in the prosecutors' interests that procedures be established because the contents of the rape evidence kits are often an important ingredient in the case against defendants at trial. In addition, there is a humane reason for the establishment of such procedures. The use of the rape evidence kit by a hospital is a voluntary act on its part. The procedures whereby various samples are taken from the victim's body can be a source of embarrassment and additional distress to victims of rape. The cooperative effort of hospitals and victims to obtain evidence that may result in the conviction of a rapist should not be permitted to go for naught because of lack of procedures to preserve the evidence.

*Judgment affirmed.*