## COMMONWEALTH *vs.* STEVEN NICHOLSON.

Suffolk. March 13, 1985. — May 2, 1985.

Present: KASS, CUTTER, & FINE, JJ.

*Rape. Robbery. Practice, Criminal,* Postconviction relief, Voir dire, Voluntariness of statement, Preservation of evidence, Argument by prosecutor. *Evidence,* Scientific test. *Constitutional Law,* Assistance of counsel.

In the circumstances of a criminal trial, a judge was not obliged to conduct a voir dire inquiry on his own initiative into the voluntariness of a defendant's statements to police, which were offered by the Commonwealth only for impeachment purposes, and, in any event, any purported constitutional defect was cured by the motion judge's determination, in a proceeding for postconviction relief, that the defendant's statements had been given voluntarily. [13-15]

Assuming that the facilities for a semen-typing test were reasonably available in 1974, the Commonwealth violated no due process rights of a defendant accused of rape by failing to perform such a test following a hospital physician's examination of the victim, where the microscope slide on which the test would have been performed was never in the Commonwealth's possession, but had been destroyed in accordance with the hospital's standard practice at that time. [15-16]

The Commonwealth could not be found to have violated any due process rights of a defendant accused of rape by failing to preserve the victim's underpants for testing, where the defendant made no sufficient showing that the garment would have been either material or exculpatory. [16-17]

At the trial of an indictment for armed robbery, the judge correctly informed the jury that their proper inquiry was not whether an alleged dangerous weapon was actually dangerous, but whether it reasonably appeared capable of inflicting bodily harm. [17]

At a criminal trial, the prosecutor's remarks in closing argument to the jury, in which he expressed a personal belief in the credibility of certain witnesses and suggested that he possessed undisclosed knowledge, although improper, did not warrant the setting aside of the defendant's convictions. [17-18]

In a proceeding for postconviction relief, a defendant made no showing that stolen property seized from his apartment at the time of his arrest should have been suppressed as evidence at his trial on the ground that the officers' discovery of the stolen objects had been the result of an informant's tip and was not inadvertent. [18-19]

A criminal defendant made no showing that any of several alleged lapses by his trial attorney had constituted ineffective assistance of counsel. [19-20]

INDICTMENTS found and returned in the Superior Court on February 12, 1974.

Following review by this court reported in 4 Mass. App. Ct. 87 (1976), a motion for postconviction relief, filed in the Superior Court Department on April 13, 1983, was heard by *John Paul Sullivan*, J.

*William C. Pericak* for the defendant.

*Judy G. Zeprun*, Assistant District Attorney, for the Commonwealth.

FINE, J. Following a jury trial in 1974, Steven Nicholson and two codefendants, Gary Mitchell and Thomas King, were convicted of armed robbery, rape, assault and battery by means of a dangerous weapon, and armed assault in a dwelling. The jury heard testimony at trial that Nicholson, accompanied by Mitchell and King, forced his way into a Boston apartment occupied by the victim. The victim testified that, over the course of the hour and three quarters during which the defendants were in her apartment, she was threatened with a gun and a knife, kicked, beaten, and tied up, and forcibly raped by all three men, who also stole several items of her property including silverware, a rug, and stereo components. Nicholson took the witness stand at trial and testified that he had forced his way into the apartment and had stolen property, but he denied that he had taken part in the rape. He attributed the rape to the third participant who he said was not King but one Sheppard. Nicholson is currently serving sentences of life imprisonment on the rape conviction and eight to ten years from and after the life sentence on the convictions of armed robbery and armed assault in a dwelling. The indictment for assault and battery by means of a dangerous weapon was placed on file with the defendant's consent. We affirmed the convictions in *Commonwealth* v. *Nicholson*, 4 Mass. App. Ct. 87 (1976).

In 1981 Nicholson, acting pro se, filed a motion for release from unlawful restraint. New counsel was appointed to repre-

sent him, and in April of 1983 he filed, pursuant to Mass.R.Crim.P. 30, 378 Mass. 900 (1979), a verified amended motion for release from unlawful restraint, for correction of sentence, and for a new trial. The motion raised numerous issues and was accompanied by affidavits. The trial judge having retired in the interim, a different Superior Court judge considered the motion, treating it as a motion for a new trial. He ruled that an evidentiary hearing was appropriate to determine one of the issues raised in the motion, namely, whether inculpatory statements introduced at trial were voluntary. Over the Commonwealth's objection, the judge proceeded to hold the hearing, after which he made written findings and rulings adverse to Nicholson. As to the remaining issues raised in the motion, the judge ruled that none had a "substantive impact on the result of the case," and he denied the relief sought in the motion. From this denial Nicholson appeals. We affirm.

Rule 30(b) allows a judge to grant a new trial at any time "if it appears that justice may not have been done." The motion judge has a considerable amount of discretion, including whether to consider at all alleged errors not preserved through timely objection at trial and whether to hear oral testimony or decide the motion on the basis of affidavits. *Commonwealth* v. *Stewart*, 383 Mass. 253, 257 (1981).[1] None of the alleged errors was adequately preserved for review by objection at trial. As to

---

[1] The motion judge also has discretion as to the scope of discovery. *Commonwealth* v. *Stewart*, 375 Mass. 253, 261 (1981). Nicholson moved, pursuant to Mass.R.Crim.P. 30(c)(4), 378 Mass. 901 (1979), to serve discovery requests upon the Commonwealth. The Commonwealth opposed this motion, arguing that Nicholson had failed to establish a prima facie case for relief. The motion judge did not act on the requests, except to order the Massachusetts General Hospital and the Commonwealth to provide the defendant with any tangible semen-stained items in their possession and, if such items could not be located, to file an affidavit to that effect. No such items could be located. The judge did not err in refusing to allow Nicholson's other discovery requests. Rule 30(c)(4) provides that where the moving party establishes "a prima facie case for relief, the judge on motion of any party may authorize such discovery as is deemed appropriate." There is no indication that the motion judge concluded that Nicholson had established a prima facie case. Even if he had so found, there was no abuse of discretion.

the issue of the voluntariness of the statements, we have examined the judge's findings and rulings to determine their propriety in light of the evidence presented to him. As to the other issues raised in the motion, the judge had before him the trial transcript in addition to the affidavits. We are uncertain whether he exercised his discretion to review those issues before reaching his conclusion that none of the alleged errors had a "substantive impact on the result of the case." Since we have before us all of the materials which were available to him, we have assumed that he did undertake to consider them, and we have reviewed his conclusions as if brought on direct appeal. *Commonwealth* v. *Blondin,* 324 Mass. 564, 567 (1949), cert. denied, 339 U.S. 984 (1950). *Commonwealth* v. *Buckley,* 17 Mass. App. Ct. 373, 374 (1984). *Commonwealth* v. *Kane,* 19 Mass. App. Ct. 129, 145 (1984).[2] Had we been of the view that the criminal proceedings were infected with prejudicial constitutional error, or that there was a substantial risk of a miscarriage of justice, we would have ordered a new trial. *Commonwealth* v. *Freeman,* 352 Mass. 556, 564 (1967). *Earl* v. *Commonwealth,* 356 Mass. 181, 184 (1969). *Commonwealth* v. *Sullivan,* 385 Mass. 497, 503 (1982).

1. *Belated voir dire on the voluntariness of the statements.* Shortly after his arrest, Nicholson gave statements to the police which, with one exception, were consistent with his testimony at trial. The exception was that in the statements he said the third person in the apartment was King. At trial he said it was Sheppard, not King. He admitted in his statements to the police substantially all of the allegations in the indictment, but he denied that he participated directly in the rape.

Nicholson's attorney filed a motion to suppress the statements but waived it before trial when the prosecutor agreed not to introduce the statements as part of his case-in-chief.

---

[2] As to all of the issues raised, the trial transcript has been scrutinized, and we have applied a "more liberal standard or attitude which is considered appropriate when the illness or [retirement] of the trial judge has made it necessary for the motion to be passed on second hand." *Commonwealth* v. *Ellison,* 376 Mass. 1, 16-17 (1978). *Commonwealth* v. *Turner,* 393 Mass. 685, 688 n. 5 (1985).

According to affidavits filed, defense counsel did not expect Nicholson to testify, and Nicholson had not informed him of any beating by the police. The statements were not introduced at trial as part of the Commonwealth's case. Nicholson elected to testify, admitting all of the charges except the rape, but telling the jury that Sheppard, not King, was the third participant. On direct examination, Nicholson's attorney inquired whether he gave a statement to the police. "Yes, after they beat me," he answered. On cross-examination by counsel for Mitchell, much of the content of the statements was revealed to the jury without objection. Thereupon, in rebuttal, the prosecutor called the officers through whom the full statements were offered and admitted, but for the limited purpose of impeachment on the question of the third participant. Nicholson's attorney neither objected to their introduction nor requested a voir dire on the issue of voluntariness. The judge did not, sua sponte, conduct a voir dire. He also did not instruct the jury as to the voluntariness of the statements, and there was no objection by defense counsel to this aspect of the charge.

The motion judge ruled that the defendant had raised "a colorable issue" and, over the Commonwealth's objection, held a hearing. The defendant and two police officers testified. In addition, the judge considered the trial testimony of a third police officer, who had died. On the basis of the evidence presented, the judge concluded that the statements had been made freely, voluntarily, and intelligently. We see no reason to disturb this conclusion since it is fully warranted on the record and subsidiary findings. *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756 (1980).

The defendant now argues that, if the trial judge should have conducted a voir dire on voluntariness, sua sponte, the proper remedy was not a posttrial evidentiary hearing but, rather, a new trial.

Having reviewed the trial transcript, we are not convinced that, in the particular circumstances, the trial judge was obliged, sua sponte, to initiate a voir dire inquiry into voluntariness. That would have been his obligation had the statements been offered as part of the Commonwealth's case-in-chief. *Jackson*

v. *Denno*, 378 U.S. 368 (1964). *Commonwealth* v. *Harris*, 371 Mass. 462, 469 (1976). Due process also requires that an involuntary statement not be introduced for impeachment purposes. *Mincey* v. *Arizona*, 437 U.S. 385 (1978). *Commonwealth* v. *Kleciak*, 350 Mass. 679, 689-690 (1966). Whether a judge, sua sponte, on due process grounds, must conduct a voir dire when a statement is offered only for impeachment purposes appears to be an open question.[3] Even if such an obligation existed generally, there are reasons why it would not have applied in the instant case. Admittedly, although the statements were not inconsistent with Nicholson's trial testimony as to any matter affecting his guilt (see *Commonwealth* v. *Chase*, 350 Mass. 738, 742 [1966]), they must have been of some benefit to the Commonwealth in that they had a tendency to erode his credibility in the minds of the jury, and his credibility was directly in issue on the charge of rape. Certainly this is not a case, however, in which the statements had "powerful probative effect." Compare *Commonwealth* v. *Harris*, *supra* at 472. Indeed, Nicholson's denial of participation in the rape in a statement, made shortly after the crime, in which he admitted the other allegations was, on the whole, supportive of his testimony at trial. Nor is the case one in which the Commonwealth unfairly sought to gain advantage from the use of the statements. The first reference to any statements made by Nicholson was in response to his own attorney's questioning,

---

[3] Although policy considerations similar to those underlying *Jackson* v. *Denno* and *Commonwealth* v. *Harris* would apply, we have located no applicable precedent holding that such an obligation exists. See *LaFrance* v. *Bohlinger*, 499 F.2d 29 (1st Cir.), cert. denied sub nom. *LaFrance* v. *Meachum*, 419 U.S. 1080 (1974), in which it was held that due process required that the trial court conduct a voir dire on the voluntariness of a witness' statement used by the prosecutor for impeachment purposes. The defendant had objected, however, to the use of the statement and the court took pains to note that "except [in] the most glaring case," it would "not look with favor on claims of coercion not timely made and expressly raised at trial." *Id.* at 36. Compare *Commonwealth* v. *Williams*, 379 Mass. 600, 605, particularly n.1 (1980), in which the court noted that it was not reaching the question of the judge's responsibility to initiate a voir dire on the issue of the voluntariness of a statement not offered by the Commonwealth as part of its case-in-chief and not offered for its truth but as evidence of the defendant's state of mind.

and their substance was brought out, without objection, in questioning by counsel for one of Nicholson's codefendants.

We need not decide, however, whether the trial proceedings were improper. Even if they were, any purported constitutional defect was cured by the determination at the posttrial hearing on the motion for new trial that the defendant's statements were given voluntarily. *Commonwealth* v. *Brady*, 380 Mass. 44, 45 (1980). See also *Jackson* v. *Denno, supra* at 394; *Commonwealth* v. *Harris*, 371 Mass. at 474 n.6; *LaFrance* v. *Bohlinger*, 499 F.2d 29, 36 (1st Cir.), cert. denied sub nom. *LaFrance* v. *Meachum*, 419 U.S. 1080 (1974); *Hill* v. *State*, 316 A.2d 557, 560 (Del. 1974). Inasmuch as the statements introduced at trial were made voluntarily, any departure from appropriate procedures at trial was not prejudicial.

2. *Failure to perform semen tests and to preserve evidence.* After talking with the police in her apartment following the rape and robbery, the victim, accompanied by a friend, went to the Massachusetts General Hospital. She was clothed only in a bathrobe, socks and shoes. The physician on duty performed a female assault examination by taking a vaginal smear and preparing a wet slide which revealed the presence of motile sperm. The physician then destroyed the slide as was the standard practice at the hospital at that time. Nicholson, for the first time on the new trial motion, argues that the Commonwealth violated his right to due process by failing to perform a semen-typing test which he contends would have supported his testimony that he did not rape the victim.

In *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963), the Court held that due process requires that the prosecution disclose to the defense any evidence in its possession which is material and exculpatory. "Neither the United States Supreme Court nor . . . [the Supreme Judicial Court] has to date read this duty to extend, beyond the disclosure of evidence already in existence and in the prosecution's control, to the gathering of evidence potentially helpful to the defense." *Commonwealth* v. *Neal*, 392 Mass. 1, 8 (1984). Of course, the absence of his semen on the person of the victim would not necessarily have exonerated Nicholson of the rape for the reason, among others,

that ejaculation is not necessary for a rape to have been committed. Even assuming that the test could have eliminated Nicholson as the depositor of the sperm found on the victim, and that the test was reasonably available in 1974, since the Commonwealth was never in possession of the slide it had no duty to test it or preserve it. *Commonwealth* v. *Wilder*, 18 Mass. App. Ct. 782, 784 (1984). See also *Commonwealth* v. *Lewinski*, 367 Mass. 889, 899 (1975); *Hilliard* v. *Spalding*, 719 F.2d 1443, 1447 (9th Cir. 1983).[4]

Nicholson also contends that his due process rights were violated by the failure of the Commonwealth to preserve the victim's underpants for testing. There is some indication that the Commonwealth had taken possession of the underpants the victim had worn before the rape. There is no evidence to suggest, however, that they were semen-stained. The victim

---

[4] We do not think basic concepts of fairness require a different result, particularly in a case such as this in which the victim's evidence in general was detailed and trustworthy. *State* v. *Vaster*, 99 Wash. 2d 44 (1983). To adopt the proposition put forward by Nicholson might result in the reversal of virtually all rape convictions since the early nineteen-seventies in which the issue of sexual intercourse was contested and in which semen-typing tests were not performed.

Fairness certainly requires giving defense counsel prompt access to all material and information in the possession of the Commonwealth and permitting tests of such materials to be conducted, at public expense if necessary. Realistically, of course, in some cases defense counsel may be reluctant to encourage pretrial laboratory testing for fear that the results could be inculpatory, thus assisting the Commonwealth in obtaining a conviction. Even when the tests are performed by defense experts, there may be some concern on the part of defense counsel that inculpatory results could benefit the Commonwealth. Nevertheless, we note that there is some authority in other jurisdictions supporting the proposition urged by Nicholson. See *State* v. *Havas*, 95 Nev. 706 (1979), holding that failure of the prosecution to acquire and preserve a rape victim's undergarments (potentially exculpatory as to the use of force) was a violation of due process; and *Bower* v. *Eyman*, 324 F. Supp. 339, 340 (D. Ariz. 1970), ruling that the State's refusal to perform semen tests was tantamount to a suppression of evidence and a violation of due process. But see *Deere* v. *State*, 100 Nev. 565 (1984). Other cases relied on by Nicholson are distinguishable because the evidence withheld had been in the possession of the State. *Davis* v. *Pitchess*, 388 F. Supp. 105 (C.D. Cal.), aff'd, 518 F.2d 141 (1974). *People* v. *Nation*, 26 Cal. 3d 161 (1980). *Crockett* v. *State*, 95 Nev. 859 (1979).

testified that her clothing was ripped off before she was raped, that she never put that clothing back on, and that she went to the hospital wearing only her bathrobe, socks and shoes. Nicholson has failed to make a sufficient showing that the underpants would have been either material or exculpatory.[5]

3. *The "toy gun" charge.* In the postarrest statements to the police, introduced in evidence at trial for impeachment purposes only, Nicholson said that the gun he had used during the robbery was a "fake plastic gun, just a toy." On the other hand, there was evidence that the object *was* a gun and that one of the defendants had threatened to blow the victim's head off with it. After Nicholson's postarrest statements were read into the record, all three defense attorneys conceded at a bench conference that, in Massachusetts, the use of a toy pistol during a robbery could constitute armed robbery. The judge charged the jury, without objection, that "if a person is put in fear by a toy gun and thereby robbed of his property . . . it is still an armed robbery." He gave a similar instruction with regard to the offense of armed assault in a dwelling. The judge did not err in so instructing the jury. *Commonwealth* v. *Perry*, 6 Mass. App. Ct. 531, 533-536 (1978). His charge informed the jury of the pertinent inquiry, not whether the alleged dangerous weapon was actually dangerous, but whether it reasonably appeared capable of inflicting bodily harm. *Commonwealth* v. *Tarrant*, 367 Mass. 411, 417 (1975). Contrast *Commonwealth* v. *Howard*, 386 Mass. 607, 608 (1982) (a case in which the robber had in his possession no instrumentality at all).

4. *Prosecutor's closing argument.* In his closing argument, the prosecutor said of the victim, "[I]n my years of experience, [she] is one of the most truthful, sincere, candid witnesses that I have seen in any courtroom." This argument was improper;

---

[5] Nicholson argues that the Commonwealth ought to be estopped to assert that the underpants were not semen-stained. The argument is based upon the following scenario: a police officer at one time took the underpants into his possession; in 1982 the officer declined to speak to Nicholson's investigator without approval from the district attorney; several months later the police officer died without have spoken to the investigator. There is no basis in these facts for an estoppel.

the prosecutor both stated his personal belief about the victim's credibility and suggested to the jury that he possessed special knowledge. *Commonwealth* v. *DeChristoforo*, 360 Mass. 531, 537 (1971). *Commonwealth* v. *Villalobos*, 7 Mass. App. Ct. 905 (1979). The force of the argument was mitigated, however, by the statement which followed immediately: "It is for you to say how she impressed you." See *Commonwealth* v. *Earltop*, 372 Mass. 199, 204 (1977). The prosecutor also vouched for the credibility of the police officers who had testified for the Commonwealth. Of one witness he said, "[H]e is a great cop, he is a worker and I will take him any day, and that goes for [two other police witnesses] too." He also said, "When you go home tonight you are going to be proud when you think of the work the police did in this case."[6] This was also improper. *United States* v. *Ludwig*, 508 F.2d 140, 142-143 (10th Cir. 1974). S.J.C. Rule 3:07, DR 7-106(*c*)(4), as appearing in 382 Mass. 787 (1981). The judge carefully instructed the jury that it was their job "to assess and evaluate the credibility . . . of the witnesses," and he informed them that closing arguments are not evidence. See *Commonwealth* v. *Gouveia*, 371 Mass. 566, 572 (1976); *Commonwealth* v. *Hoppin*, 13 Mass. App. Ct. 36, 38-41 (1982). Compare *Commonwealth* v. *Villalobos, supra*. On balance, we do not view the prosecutor's comments, taken in the context of the entire argument and the judge's charge, as justifying reversal of the conviction on the ground of risk of a miscarriage of justice. See *Commonwealth* v. *Bourgeois*, 391 Mass. 869, 878-879 (1984).

5. *Failure to suppress the stolen property.* Nicholson's attorney did not move at trial to suppress the property seized in Nicholson's apartment at the time of his arrest. Nevertheless, when the items were offered in evidence, the judge conducted a voir dire examination as to their admissibility. He made findings and concluded that the arresting officers had entered Nicholson's apartment with consent, that the items were in

---

[6] We have reviewed other statements made by the prosecutor which Nicholson argues were improper. In each instance, however, the argument was based upon evidence in the record.

plain view, that the officers had probable cause to seize them and, since there was no search, that there was no need for a search warrant. Nicholson argues now that the police, having spoken to an informer before proceeding to the apartment to make the arrest, expected to find the stolen objects, and their discovery, therefore, was not inadvertent. There is no basis in the material presented to the motion judge for such a conclusion. The defendant's contention is based upon pure speculation.

6. *Ineffective assistance of counsel.* Nicholson approached his trial faced with overwhelming evidence that he was one of the persons present in the Beacon Street apartment when the crimes were committed. His fingerprints had been found in the apartment; he was discovered in possession of the victim's property taken in the robbery; the victim identified him as being one of the culprits; he lived near the location to which the taxi driver drove the culprits immediately after the crime occurred; and he had provided the police with incriminating statements. It cannot be said that the tactic of not contesting anything but the rape, in these circumstances, was unreasonable.[7] This late claim of ineffective assistance of counsel must be examined in light of these realities.

We have ruled that the toy gun instruction was not erroneous. Therefore, counsel cannot be criticized for failing to object to it. There is an insufficient showing that semen testing was a reasonably available option for defense counsel or that it would have yielded useful results for the defendant. An objection to the prosecutor's closing argument probably would have resulted in an admonition to counsel and more pointed curative instructions. However, we have ruled that any impropriety in the argument was not prejudicial. Waiver of the motion to suppress the rug, stereo, and speaker was not prejudicial in light of the voir dire, conducted in the midst of trial, regarding the search.

A further word should be said concerning defense counsel's failure to request a voir dire at trial as to the voluntariness of

[7] During the trial the defendant offered to plead guilty to all of the charges except the rape, but the offer was not accepted by the trial judge.

Nicholson's statements to the police. While the statements may have had some adverse impact on Nicholson's credibility, his credibility had been severely damaged by other inconsistencies in his testimony. As to the issue of his participation in the rape, the only live issue affecting him at trial, the statements were essentially consistent with his trial testimony and made at a point in time shortly after the commission of the crime. Had Nicholson sought, over objection, to have them admitted as prior consistent statements, they would have been excluded. Counsel could reasonably have viewed them as generally helpful to the defendant's case in its one crucial aspect. The defendant should not, with the advantage of hindsight, now be permitted to criticize his attorney for making what would have been a reasonable tactical choice.[8] Moreover, we know, on the basis of the results of the posttrial hearing that, had a timely request for a voir dire been made, it probably would not have resulted in a suppression of the statements.

Thus, as to the alleged lapses by counsel, Nicholson has not shown that there has been "serious incompetency, inefficiency, or inattention of counsel . . . falling measurably below that which might be expected from an ordinary fallible lawyer" (*Commonwealth* v. *Saferian*, 366 Mass. 89, 96 [1974]; see *Strickland* v. *Washington*, 466 U.S. 668 [1984]), or that better work at the trial stage "would have accomplished something material for the defense." *Commonwealth* v. *Dalton*, 385 Mass. 190, 195 (1982). Nor is it likely that an appeal based upon any of the issues raised on the new trial motion would have resulted in a reversal of the conviction.

*Order denying motion for new*
*trial affirmed.*

---

[8] We acknowledge the statement made by defense counsel in his affidavit that his reason for not objecting or requesting a voir dire was his mistaken assumption that an involuntary statement of a criminal defendant who testifies is admissible for impeachment purposes.