COMMONWEALTH *vs.* DAVID J. BRADY.

Middlesex.  November 6, 1979. — March 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional
rights, Assistance of counsel. *Evidence*, Admissions and confessions.
*Practice, Criminal*, Admissions and confessions, Assistance of counsel.

At a criminal trial, evidence of the defendant's intoxication did not have
the effect of raising an issue of the involuntariness of the defendant's
statements sufficient to trigger the requirement that the judge conduct
a voir dire hearing sua sponte on the issue of voluntariness. [48-52]
At a criminal trial, the judge was not required to make specific findings
on the voluntariness of the defendant's statements where the evidence
was not conflicting and raised no question of custodial coercion. [52]
At a hearing on a motion for a new trial, there was sufficient evidence
to warrant the judge's finding as to the voluntariness of the defendant's
statements.  [52-53]
At a criminal trial, the judge did not err in failing to submit the question
of the voluntariness of the defendant's confessions to the jury where the
issue was not sufficiently raised by the evidence.  [53-55] ABRAMS, J.,
concurring.
There was no merit to the defendant's contention that he was denied
effective assistance of counsel.  [55-57]

INDICTMENT found and returned in the Superior Court on
July 9, 1969.

The case was tried before *Spring*, J., and a motion for a
new trial was heard by *Tamburello*, J.

*J. Russell Hodgdon* for the defendant.

*Robert M. Raciti*, Assistant District Attorney, for the
Commonwealth.

HENNESSEY, C.J.  The defendant, David J. Brady, was
convicted of murder in the first degree in connection with
the death of a three year old child and was sentenced to life
imprisonment.  The defendant's pro se petition for writ of

error, alleging the failure of his trial counsel to file a claim of appeal as requested or to inform him of pro se appellate procedures, was stayed pending a hearing on a motion for a new trial filed by a court-appointed attorney in the Superior Court. The motion for a new trial raised the issue set forth in the original petition for writ of error and additional issues relating to the admission of the defendant's inculpatory statements at trial and the effectiveness of trial counsel. That motion was denied, and the defendant now appeals. He contends that the trial judge committed error in failing to conduct sua sponte a voir dire of certain witnesses who testified concerning statements made to them by the defendant at a time when, according to the defendant, he was unable to make voluntary declarations because he was intoxicated and suffering from a "head injury." The defendant also complains of the judge's failure to rule on the voluntariness of the confessions after voir dire testimony of two policemen and his failure to submit the issue to the jury sua sponte. In the alternative, the defendant claims he was denied effective assistance of counsel by reason of trial counsel's failure to request voir dire hearings, rulings of law, and jury instructions concerning his confessions, and by his counsel's failure to call as witnesses certain persons who were present at the time of the defendant's arrest and detention. Finally, the defendant urges us to exercise our powers under G. L. c. 278, § 33E, to grant him a new trial or to mitigate the degree of guilt.

We conclude that the evidence elicited at trial on the questions of the defendant's intoxication and "head injury" was not sufficient to require the trial judge to inquire sua sponte as to the voluntariness of the defendant's inculpatory statements; that the judge's admission of the defendant's confessions after nonconflicting voir dire testimony constituted a clear determination of their voluntariness; that even if we assumed the voir dire examinations were deficient in the evidence taken or the rulings made, the determination at the posttrial hearing that the defendant's statements were voluntarily given cured any purported defects; that

the judge had no obligation to instruct the jury concerning the possible involuntariness of the defendant's statements where trial counsel had apparently abandoned the issue, requested no instructions on the subject, and raised no objections or exceptions to the charge; that trial counsel's omissions were tactical decisions that did not constitute ineffective assistance of counsel; and that the defendant is entitled to no relief under G. L. c. 278, § 33E. Accordingly, we affirm the conviction. In doing so, we observe that the overriding factor relating to all issues raised in this appeal is the defense counsel's trial tactic of stressing alibi. This strategy, especially obvious in the defendant's detailed alibi testimony, required an approach which was inconsistent with a claim of involuntariness of admissions by reason of intoxication.

We briefly summarize the events leading to the defendant's arrest. We then turn to the testimony elicited at trial with regard to the issue of voluntariness. Additional facts may be found in the context of our discussion of the various arguments raised by the defendant.[1]

During the evening of June 29, 1969, the defendant telephoned several people, including his father, his former wife, and a priest, and he related seemingly conflicting stories. He reported to these persons both that he had killed "somebody" and that he had found "a body" in his room. The defendant's father notified Stoneham police, who then found the body of a three year old girl on a closet shelf in a boarding-house room rented to the defendant. The victim had died of asphyxiation in the late morning of June 29. She had been sexually assaulted. The defendant was arrested in the early morning of June 30 while in the company of two priests.

At the trial the defendant's ex-wife, his father, and four police officers were allowed to testify as to declarations made to them by the defendant during the evening and ear-

---

[1] The defendant's motion, pursuant to Mass. R. A. P. 8 (e), as amended, 378 Mass. 924 (1979), to expand the record on appeal to include the report from Bridgewater State Hospital has been allowed.

ly morning of June 29 and 30. When two of the four police-men were asked to relate the defendant's statements, de-fense counsel requested and was granted a voir dire. From one officer, counsel elicited the observation that the defend-ant "had been drinking" but was "not drunk" although he "may have been [under the influence of liquor]." The wit-ness also indicated that the defendant did not complain about a laceration received in a barroom dispute. At the conclusion of the voir dire, the judge said, "All right," and the jury were returned to the court room. When the officer was asked to recount the defendant's statements, defense counsel objected but, when asked on what grounds, he withdrew the objection. Thereafter, the witness testified that while he was fingerprinting the defendant, the defend-ant blurted out that he was "going to Walpole for twenty years" and that he did not "remember doing it." On voir dire examination of the other officer, counsel was unsuc-cessful in his effort to controvert the officer's assessment that the defendant had been drinking but was not drunk. After the voir dire, defense counsel stated that he assumed the court would "rule that everything was in proper order." The judge replied that counsel could object to questions as they were asked. Counsel did not object, however, and the officer testified that on the way to the police station, the de-fendant stated, "I killed her. She was bugging me. I don't know why, but I killed her."

When the defendant's former wife, his father, and the two other police officers were asked to relate the defendant's statements, defense counsel neither requested voir dire nor objected to the admission of the statements. The defend-ant's attorney did question the defendant's father as to his son's drinking habits and interrogated the other witnesses on the level of the defendant's sobriety at the time of his statements to them. The defendant's former wife stated that she "presume[d]" the defendant was drunk when he telephoned her to say that he had murdered someone because "[t]o say something like that, he had to be out of his head." The witness observed further that the defendant was

drunk "most of the time." The defendant's father testified
that when the defendant talked with him on the telephone,
"there was something wrong with him," as if he were
"under the influence of liquor or something." The father
also stated that he saw the defendant at the police station at
7:30 A.M. on June 30 and that the defendant "was raving
and . . . marked up with blood and had a very bad cut on
his head." The two other police officers corroborated pre-
vious testimony that at the time of his arrest and statements
to the police the defendant had been drinking but was not
drunk and had understood the Miranda warnings read to
him. In addition, one officer testified that he and several
other policemen finally convinced the defendant that he
needed medical attention for the cut over his eye and then
escorted him to a hospital.

The defendant's testimony set forth details establishing
an alibi and bolstering the theory that someone else had used
his room and killed the child there. His account itemized
his considerable consumption of alcohol and drugs over a
period from early morning on Saturday, June 28, to mid-
night on Sunday, June 29, a period of approximately forty
hours.

1. *Voluntary nature of the confessions.* It is well estab-
lished that due process is violated when a conviction is
based, in whole or in part, upon an involuntary confession.
E.g., *Jackson* v. *Denno,* 378 U.S. 368, 376 (1964). The
United States Supreme Court has required a hearing out of
the jury's presence to determine the issue of voluntariness
whenever a defendant raises that issue. *Id.* at 391-394. Not
only must a trial judge conclude that a confession was freely
and voluntarily given before he allows the jury to hear it,
but his "conclusion that the confession is voluntary must ap-
pear from the record with unmistakable clarity." *Sims* v.
*Georgia,* 385 U.S. 538, 544 (1967). However, if the defend-
ant fails to raise the voluntariness question, the hearing pre-
scribed by *Jackson* v. *Denno, supra,* is not constitutionally
mandated. *Wainwright* v. *Sykes,* 433 U.S. 72, 86 (1977). A
sua sponte obligation on the part of a trial judge has been

recognized by this court in *Commonwealth* v. *Harris,* 371 Mass. 462, 469-472 (1976). *Harris* set forth the requirement that, where evidence of "a substantial claim of involuntariness" is produced, a trial judge must conduct a voir dire on the question of voluntariness even though no such request has been made by defense counsel. *Id.* at 470. See *Commonwealth* v. *Masskow,* 362 Mass. 662, 667-668 (1972) (disclosure of evidence of insanity). In addition, Massachusetts practice dictates that a judge make a ruling on the voluntariness of the confession and instruct a jury that they may reconsider the issue of voluntariness should the confession be admitted. *Commonwealth* v. *Harris, supra* at 469-470.

This court has recognized that intoxication may render a confession involuntary. *Commonwealth* v. *Wampler,* 369 Mass. 121, 124 (1975). *Commonwealth* v. *Hosey,* 368 Mass. 571, 577-579 (1975). However, we have never held that mere evidence of drinking alcohol or using drugs triggers a trial judge's obligation to inquire into the voluntariness of an admission or confession absent a defendant's objection. See *Commonwealth* v. *Doyle,* 377 Mass. 132, 136-138 (1979); *Commonwealth* v. *Hooks,* 375 Mass. 284, 287-290 (1978); *Commonwealth* v. *Fielding,* 371 Mass. 97, 109-113 (1976); *Commonwealth* v. *Sires,* 370 Mass. 541, 543-545 (1976). Cf. *Commonwealth* v. *Podlaski,* 377 Mass. 339, 342-343 (1979). Nor should that obligation arise from mere evidence of an accused's sustaining a cut in a barroom scuffle. Cf. *Lego* v. *Twomey,* 404 U.S. 477, 480 (1972). Furthermore, the sua sponte requirement of *Harris, supra,* was not intended to force continued inquiry into voluntariness once defense counsel has concluded, as defense counsel indicated here by his testimony at the hearing on the motion for new trial, that voluntariness is no longer a live issue. See *Commonwealth* v. *Podlaski, supra* at 343 n.4.

The judge conducted voir dire examinations of two of the four police witnesses. There was no credible evidence contradicting the fact that, before he made his spontaneous statements to the police, the defendant had been informed of his constitutional rights under *Miranda* v. *Arizona,* 384

U.S. 436 (1966). The uncontroverted voir dire testimony of both policemen established that the defendant had been drinking but was not drunk. Thus, the judge had no reason to find that an issue of voluntariness had been raised by the voir dire examinations of the two policemen. Nor did the judge have an "occasion to focus on, or to make findings concerning, the issue of voluntariness" during or after the testimony of the defendant's father and former wife.[2] *Commonwealth* v. *Podlaski, supra* at 343 n.4. The only material evidence concerning the defendant's intoxication at the time of his telephone statements to these witnesses was derived from their telephone contact with the defendant. The evidence that the ex-wife "presume[d]" the defendant was drunk because "he had to be out of his head" to say that he had murdered someone and that his father thought that the defendant seemed to be "under the influence of liquor or something" was not the "affirmative," "credible" evidence of involuntariness which triggers a *Harris* voir dire. *Commonwealth* v. *Harris,* 371 Mass. 462, 471 n.3 & 472 (1976). The posture of the evidence with regard to intoxication was essentially the same when the final two police officers testified.

The defendant, however, appears to argue that, following his testimony, the issue of intoxication became so substantial that the trial judge was obliged under *Harris* to reopen the question of voluntariness and conduct a full evidentiary hearing sua sponte. We disagree. In *Harris,* a genuine issue of voluntariness was first raised by the defendant's testimony that he was beaten by police until he confessed. 371 Mass. at 466-467. There having been no pre-

---

[2] We reserve the question whether the sua sponte voir dire called for in *Commonwealth* v. *Harris,* 371 Mass. 462 (1976), is mandated in a situation where noncustodial, uncoerced (cf. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 680-681 [1975], cert. denied, 425 U.S. 959 [1976]), inculpatory statements are made to civilian witnesses by one intoxicated from alcohol or drugs. Cf. *United States* v. *Bernett,* 495 F.2d 943, 947 n.15 (D.C. Cir. 1974). Even were we to hold *Harris* applicable to such situations, as the defendant urges, the facts with regard to intoxication in the instant case are not sufficient to trigger a judge's sua sponte voir dire obligation.

vious investigation of the issue, this court held that a voir dire should have been immediately ordered by the judge on his own motion. The egregious nature of those allegations, their obvious relation to involuntariness, and the fact that Harris's testimony was not rebutted by the police justified our conclusion that the judge should have acted sua sponte. In contrast, the defendant's testimony in the present case did not revive the issue of voluntariness. The thrust of his testimony was a defense of alibi and the innocent discovery of the victim's body in his closet. His particularized chronicle of drug and alcohol use entailed a period of approximately forty hours. While the defendant classified himself as "drunk" at various times during that period, he never clearly focused on his condition during the critical times of his telephone conversations or inculpatory statements to police. The defendant did not deny that Miranda warnings were read to him prior to his statements to police. Most importantly, he alleged no police conduct suggesting coercion, nor did he controvert voir dire testimony that his statements to police were completely spontaneous and not elicited by police questioning. On this review of the evidence, it cannot be fairly said that the defendant's testimony either was intended to raise or could have had the effect of raising an issue of involuntariness sufficient to trigger the sua sponte voir dire requirement of *Harris.* See *id.* at 471 n.3.

With regard to the defendant's "head injury," we note that the record is devoid of any evidence that the defendant suffered any ill effects from the injury or that it in any way impaired his mental functioning. Contrast *Pea* v. *United States,* 397 F.2d 627 (D.C. Cir. 1967) (confession given while defendant suffering from concussion with bullet lodged in his head held involuntary). Further, since the laceration was apparently sustained after the defendant's telephone conversations with his former wife and father, it would be material only with respect to the defendant's subsequent statements to the police. The voir dire testimony, however, offered no occasion to the trial judge, in his examination of the totality of the circumstances leading up to the

waiver, to concentrate on this factor apart from the over-all conduct and characteristics of the accused. See *Commonwealth* v. *Daniels,* 366 Mass. 601, 606 (1975). Nor did defense attorneys pursue its possible relation to voluntariness by eliciting testimony of mental or physical impairment as a result of the injury. See *Commonwealth* v. *Podlaski,* 377 Mass. 339, 343 n.4 (1979); *Commonwealth* v. *Harris, supra* at 471 n.3.

The defendant next contends that the trial judge failed to make or file specific findings on voluntariness following the voir dires of the two police officers and that consequently his rulings on the issue do not meet the requisite standard of "unmistakable clarity." See *Sims* v. *Georgia,* 385 U.S. 538, 544 (1967). Although we have stated that "it is both 'prudent' and 'desirable' for a judge to make a record of facts found in a voir dire hearing on the admissibility of evidence," we have not held that "unmistakable clarity" mandates "an absolute requirement that such a record be made." *Commonwealth* v. *Forrester,* 365 Mass. 37, 45 (1974). Failure to make explicit findings "does not in and of itself constitute reversible error." *Id.* See *Sims* v. *Georgia, supra* at 544; *Jackson* v. *Denno,* 378 U.S. 368, 378-379 & n.8 (1964). Where, as in the present case, the evidence presented at the voir dire is not conflicting and does not raise any question of custodial coercion, the judge's decision to admit the defendant's statements makes his conclusions as to voluntariness "clearly evident from the record." *Jackson* v. *Denno, supra* at 378-379. We emphasize, however, that we in no way condone the judge's failure to make findings.

2. *Posttrial hearing on voluntariness.* Even were we to assume that the voir dire examinations were constitutionally deficient with regard to the evidence taken or the rulings made, any remaining doubts concerning the admissibility of the defendant's statements were resolved at the hearing on the motion for new trial. See *Jackson* v. *Denno, supra* at 394, and *Commonwealth* v. *Harris,* 371 Mass. 462, 474 n.6 (1976) (posttrial hearing satisfies constitutional requirement). Five witnesses, including the trial attorney, the at-

torney called to represent the defendant shortly after his arrest, a priest who met with the defendant immediately before his arrest, and two of the four police officers who testified at the original trial, testified at the hearing. After hearing their testimony directed to the defendant's condition on the night in question, the hearing judge concluded that there was no "legitimate issue of intoxication with respect to the testimony of [the civilian witnesses]." Moreover, "[t]here was no credible evidence that the defendant was drunk and did not know what he was doing when he made the statements [to the police]. . . . The defendant understood his rights, knowingly and intelligently waived them, and made his statements freely and voluntarily . . . . The defendant was not disabled through intoxication and carried on a rational discourse . . . ." The ultimate findings and rulings of the motion judge are reviewable by this court, since they are of constitutional dimension, *Commonwealth* v. *Murphy*, 362 Mass. 542, 550-551 (1972) (Hennessey, J., concurring), but we see no reason to disturb the conclusion of voluntariness in this case, since it is fully warranted on the record and subsidiary findings.[3] See *Commonwealth* v. *Doyle*, 377 Mass. 132, 138 n.6 (1979), and cases cited.

3. *Jury instructions regarding voluntariness.* The defendant also argues that the charge to the jury was defective on the ground that the judge failed to submit the question of the voluntariness of the confessions to the jury, even though he had concluded from uncontroverted voir dire testimony

---

[3] In addition to the subjective assessments of each of the witnesses concerning the defendant's mental state, the judge had before him and could consider certain objective indicia such as the defendant's ability to recall in great detail in his trial testimony both his activities and pertinent time sequences; his ability to recall for police the telephone number of a taxi company; his arranging and completing a rendezvous with priests at a Boston shrine; his deducing that the plainclothes officers who approached him at the shrine were policemen; his ability to sign a Miranda card without difficulty; and his ability to provide personal background information to a physician at the hospital. See *Commonwealth* v. *Doyle*, 377 Mass. 132, 137 (1979); *Commonwealth* v. *Sires*, 370 Mass. 541, 545 (1976).

that the statements were voluntary. While jury reconsideration of the voluntariness issue when there is conflicting testimony is a settled practice in this Commonwealth, *Commonwealth* v. *Harris*, 371 Mass. 462, 469-474 (1976); *Commonwealth* v. *Johnston*, 373 Mass. 21, 24 (1977), it is not mandated under the Federal Constitution. *Lego* v. *Twomey*, 404 U.S. 477, 489-490 (1972). Where, as in this case, the judge has ruled on the issue and defense counsel has made no objections, taken no exceptions, requested no jury instructions on the subject, and made no objections to such an omission in the charge, this court will find reversible error under G. L. c. 278, § 33E, only "upon a showing of grave prejudice or substantial likelihood that a miscarriage of justice has occurred." *Commonwealth* v. *Roberts*, 378 Mass. 116, 123 (1979). See *Commonwealth* v. *Harris*, *supra* at 471. See also *Commonwealth* v. *Garcia*, 379 Mass. 422, 439 (1980) (in absence of objection or exception § 33E standard applied to error of constitutional magnitude in jury charge). Cf. *Hankerson* v. *North Carolina*, 432 U.S. 233, 244 n.8 (1977) ("The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error"). In applying this standard of review we consider the entire record, including the hearing judge's posttrial findings and rulings as to intoxication and voluntariness. Cf. *Commonwealth* v. *Johnson*, 379 Mass. 177, 181 (1979). We conclude that relief under this standard of review is not called for here.

However, even were we to pass over the lack of objection or exception to the failure to submit the issue to the jury, the particular facts of this case do not warrant jury reconsideration. As we stated in *Commonwealth* v. *Alicea*, 376 Mass. 506, 523 (1978), "The overriding consideration is that there is no duty to ask the jury to pass on voluntariness unless it is made a live issue at trial." We know from testimony at the hearing on the motion for a new trial that trial counsel deliberately abandoned the issue of voluntariness following the two voir dires. We have already concluded

above that the defendant's testimony was not sufficiently focused on the critical times of his inculpatory statements so as to revive the issue of voluntariness. Moreover, counsel's closing argument focused on intoxication only so far as it bore on the trustworthiness, as opposed to the voluntariness, of the defendant's statements. Accordingly, "[w]e conclude that after the voir dire the question of voluntariness was not 'raised with sufficient point to require an express admonition to the jury by the Court [on its own motion].'" *Commonwealth* v. *Pratt,* 360 Mass. 708, 714-715 (1972), quoting *Stevenson* v. *Boles,* 331 F.2d 939, 942 (4th Cir.), modified and aff'd, 379 U.S. 43 (1964). See *Commonwealth* v. *Williams,* 378 Mass. 217, 226-227 (1979); *Commonwealth* v. *Alicea, supra* at 522-523. Cf. *Commonwealth* v. *Johnson,* 352 Mass. 311, 316-317 (1967), cert. dismissed, 390 U.S. 511 (1968). Contrast *Commonwealth* v. *Chung,* 378 Mass. 451, 458 n.8 (1979)(defendant objected to admission of confession, asked judge to instruct jury at time of voir dire, presented "extensive psychiatric evidence of involuntariness" at trial).

4. *Assistance of counsel.* The defendant contends that certain omissions by trial counsel deprived him of effective assistance of counsel. He points to counsel's failure to call certain witnesses, who allegedly could bolster his claim of involuntariness and place in doubt the validity of his confessions, and to counsel's failure to request voir dires, rulings of law, and jury instructions with regard to the voluntariness of his confessions. We cannot conclude that counsel's omissions demonstrated "serious incompetency, inefficiency, or inattention of counsel" or that his representation fell "measurably below that which might be expected from an ordinary fallible lawyer." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).

The defendant's attack on the validity of his confessions to police lacks factual support. The affidavit of one of the priests present at the time of the defendant's arrest merely states that the affiant was so upset at the time of arrest that he could not remember whether Miranda warnings were

read or whether the defendant made any admissions. Other than the defendant's comment that he did not remember half the things he said on the night in question, there is no indication in the record of the trial or the hearing on the motion for a new trial that the defendant did not make the statements or that Miranda warnings were not given.

Nor would these witnesses' testimony have significantly bolstered the involuntariness claim. The attorney called to the police station was unwilling to categorize the defendant as "drunk." The second priest, whose testimony may have been helpful, was privy to an additional statement by the defendant, in which the defendant asked the priest, "How would you feel if you had killed a little girl?" The defendant cannot argue with the advantage of hindsight that trial counsel was ineffective because he failed to risk the introduction of this potentially damaging precustody statement in exchange for the priest's testimony concerning intoxication. See *Commonwealth* v. *Rondeau*, 378 Mass. 408, 413 (1979); *Commonwealth* v. *Williams*, 378 Mass. 217, 239 (1979); *Commonwealth* v. *Adams*, 374 Mass. 722, 728-729 (1978).

The defendant's challenge of his attorney's other tactical decisions to abandon the issue of voluntariness and to request no additional voir dire testimony or jury instructions on that theory must likewise fail. Effective assistance is not measured by trial counsel's willingness to indulge every available procedure no matter how futile. See *Commonwealth* v. *LeBlanc*, 364 Mass. 1, 11-12 (1973). In deciding not to pursue the voluntariness issue, trial counsel could have considered the absence of any evidence of physical coercion. In addition, he could have considered the substantial testimony that the defendant was not drunk at the time he made his statements to the police and the objective indicia of the defendant's sobriety, *supra* note 3, and could have concluded that he should not press the argument that the defendant was drunk. He also could have concluded that arguing to the jury, immediately after the defendant's particularized recall of his activities, that the confessions were involuntary because of the defendant's intoxication

might jeopardize the defendant's credibility with regard to his alibi. Consistent with this conclusion, counsel's closing argument attacked the trustworthiness of the admissions and not the defendant's ability to make them. For the foregoing reasons, we cannot conclude that counsel's tactical decisions were "manifestly unreasonable." See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

5. *G. L. c. 278, § 33E.* We have examined the entire case on the law and the evidence, and we conclude that there is no basis on which to order a new trial or direct the entry of a verdict of a lesser degree of guilt.

*Judgment affirmed.*


ABRAMS, J. (concurring). I agree with the opinion as a whole, but concur especially to express my view on whether the voluntariness of the confession should have been submitted to the jury. The evidence indicated that the defendant had been drinking heavily "prior to, during, and after the commission of the [crime]." *Commonwealth* v. *Chung*, 378 Mass. 451, 457 (1979). In my view, that evidence was sufficient to raise the issue of the voluntariness of the statements and require the judge to submit the issue of the voluntariness of the defendant's confessions to the jury in accordance with our "humane practice." See *Commonwealth* v. *Johnston*, 373 Mass. 21, 24 (1977); *Commonwealth* v. *Harris*, 371 Mass. 462, 469-470 (1976); *Commonwealth* v. *Cole, ante* 30 (1980).

The defendant, however, chose to challenge the truthfulness of his inculpatory statements apart from arguing that their involuntariness might affect their trustworthiness and reliability. Cf. *Jackson* v. *Denno*, 378 U.S. 368, 385-386 (1964). In his closing argument, defense counsel specifically referred to the testimony of the defendant's father that his son lied so often it was difficult to tell the lies from the truth. At trial, the defendant testified that he made statements which were untrue because he was sick of the "kind

of life [he] led" and "wanted to die." There was also evidence indicating that when the defendant was arrested he told the police he had a gun, but in fact he did not. As the main opinion points out, at no time did the defendant's testimony focus on the involuntariness of his statements due to intoxication.

Finally, defense counsel failed to raise the issue of voluntariness after the voir dires and he did not request appropriate jury instructions. At the hearing on the motion for a new trial he stated that he had abandoned the issue of voluntariness. The record confirms that at trial the defendant's inculpatory statements were attacked by counsel as untrue and that his approach was a strategic choice rather than inadvertent oversight or ineptitude.

A trial strategy which is not successful does not necessarily indicate error or ineffective assistance of counsel. "There are certain risks inherent in most strategic decisions and tactical moves, and the strategist or tactician on neither side is in a very good position to claim foul if his own strategy backfires or he is outmaneuvered. It is not a function of this court to protect a litigant from the inherent consequences of a risk which he voluntarily assumes." *Commonwealth* v. *DiPietro*, 373 Mass. 369, 391 (1977). I, therefore, concur in the conclusion that in these circumstances the judge was not obliged to submit the issue of the voluntariness of the defendant's statements to the jury.