COMMONWEALTH vs. WILLIAM E. BANDY, JR.

No. 94-P-216.

Worcester. January 4, 1995. - April 4, 1995.

Present: DREBEN, GILLERMAN, & LAURENCE, JJ.

*Constitutional Law*, Admissions and confessions, Waiver of constitutional rights, Assistance of counsel. *Evidence*, Admissions and confessions, Medical record, Spontaneous utterance, Prior conviction. *Practice, Criminal*, Admissions and confessions, Voluntariness of statement, Assistance of counsel, Continuance.

At a criminal trial, evidence of the defendant's condition at the time he made certain admissions to a private citizen did not amount to "a substantial claim of involuntariness" as would have required the judge, on his own motion, to conduct a voir dire hearing to determine the voluntariness of the defendant's statements. [330-332]

A criminal defendant's incriminating statement made to a probation officer filling out an indigency report for the defendant's arraignment was not demonstrated to have been obtained in violation of the defendant's rights under the Sixth Amendment to the United States Constitution, and the statement was properly admitted in evidence at trial. [332-335]

At the trial of complaints for homicide by motor vehicle while under the influence of intoxicating liquor, operating a motor vehicle while under the influence of intoxicating liquor, and operating a motor vehicle negligently so as to endanger, arising from the collision of two automobiles, the judge properly within his discretion denied defense counsel's request for a continuance to obtain an expert to explain an ambiguity in a medical record of the driver of the other vehicle, where counsel had been on notice that an expert would be required and had had an opportunity the previous day to consult with an expert and where counsel could have obtained the records at an earlier date. [335-336]

At a criminal trial, the judge properly excluded as evidence certain self-serving statements of the defendant where there was insufficient basis to conclude that the statements were admissible as spontaneous utterances. [336-337]

Error of the judge at a criminal trial, who failed to exercise his discretion in precluding the defendant from eliciting the prior convictions of a defense witness during direct examination, did not require reversal in view of the substantial evidence supporting the jury's verdicts. [337]

COMPLAINT received and sworn to in the Dudley Division of the District Court Department on April 13, 1992.

On appeal to the jury session of the Worcester Division, the case was tried before *Patrick A. Fox*, J.

*Irwin Kwiat* for the defendant.

*Matthew J. Mullaney*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. The defendant and Charles Besse, both seventeen, were the occupants of a car which collided with a vehicle driven by Patrick Morris. Besse died as a result of his injuries, Morris was seriously injured, and the defendant was hospitalized. During his convalescence, the defendant was charged with, and subsequently convicted of, three motor vehicle offenses — homicide by motor vehicle while under the influence of intoxicating liquor (G. L. c. 90, § 24G), operating a motor vehicle while under the influence of liquor resulting in serious injury (G. L. c. 90, § 24L), and operating a motor vehicle negligently so as to endanger (G. L. c. 90, § 24[2][*a*]). His defense was that Besse, not he, had been the driver. In his appeal (appellate counsel did not try the case), the defendant points to five evidentiary rulings of the trial judge which he claims were erroneous and require reversal of his convictions. We affirm the judgments.

1. *The defendant's admissions to an EMT.* A passing truck driver stopped when he saw that there had been a collision. He testified that one of the cars was on fire and that a person, later identified as Bandy, was attempting to crawl out of a window of the car. The truck driver pulled him from the car, rolling him and patting him down as his clothes as well as the skin on his left leg were burning.

Another motorist, a licensed emergency medical technician (EMT), also stopped, and after calling for help, covered the defendant with a blanket. Over counsel's objection on the ground that the defendant was "hallucinating at that time," the EMT was permitted to testify that she had a conversation with the defendant, who said that he wanted his "mommy" and stated, "It's all my fault. . . . It was on fire before I hit him."

On appeal, the defendant claims that his condition required the judge sua sponte to conduct a voir dire hearing to determine the voluntariness of his statements to the EMT. The defendant did not request such voir dire either before or during the trial, and did not seek a special instruction on the voluntariness of these statements. The judge, however, as set forth in the margin,[1] in his final charge instructed the jury on the issue, implicitly finding that the statements were voluntarily made.

While a judge has an obligation to conduct a voir dire, sua sponte, where evidence of "a substantial claim of involuntariness" has been presented, *Commonwealth v. Brady*, 380 Mass. 44, 49 (1980), there was no such evidence here. Although the defendant had stipulated that his blood alcohol level was .14, he refused to stipulate to intoxication. Defense counsel did not mention alcohol consumption as a ground for excluding the statement, and, moreover, mere evidence of alcohol consumption does not by itself trigger a trial judge's "obligation to inquire into the voluntariness of an admission or confession absent a defendant's objection." *Ibid.*

The claim of hallucination on which the defendant relied was not supported by the evidence either at the time of his objection or during the rest of the trial.[2] Indeed, when the

---

[1]Under the "humane practice" rule, which applies also to statements made to private citizens, *Commonwealth v. Allen*, 395 Mass. 448, 456 (1985), the judge should first determine whether the statements are voluntary, and, if so, the question should then be submitted to the jury. Here the judge charged the jury as follows:

"Further, ladies and gentlemen, you have heard testimony in this case about a statement allegedly made by the defendant concerning the offense, or the offenses, with which he is charged. Before you may consider any such statement made by the defendant, you are going to have to make a preliminary determination whether it can be considered as evidence or not. You may not consider any such statement in your deliberations unless, from all the evidence in the case, the Commonwealth has proved beyond a reasonable doubt that the defendant made the statement that he is alleged to have made and that he made it voluntarily, freely, and rationally. If the Commonwealth has met that burden, then you may consider the defendant's statement and rely on it as much or as little as you think proper, along with all the other evidence in the case."

[2]The persons who took him to the hospital testified that the defendant was conscious and alert.

EMT was specifically questioned on this point by the defendant, she testified that he did not "appear to be hallucinating." While the defendant had extensive burns, there was no evidence that the burns impaired his mental functioning. See *id.* at 48, 51 (sua sponte voir dire unnecessary where there was testimony that the defendant had a "very bad cut on his head" but no evidence that mental functioning was impaired). See also *Commonwealth* v. *Paszko*, 391 Mass. 164, 173 n.10 (1984) (where record indicates that the statements would have been admitted even if a voir dire had been held, the defendant is not prejudiced by the judge's failure to hold such a hearing).

2. *The defendant's admission to a probation officer that he was the driver.* On the day of the defendant's arraignment, Kathy Brezenski was the probation officer in the Dudley District Court in charge of filling out his indigency report, a report that she explained was required of all persons arraigned on criminal charges. When asked what was one of the first things that she asked of defendants, she answered that she requested their name and the charges against them. She testified that normally defendants have a blue slip that lists the charges, but Bandy did not have the slip with him. She asked him if he knew the nature of the charges against him, and he listed the three charges. Brezenski then said, "These are real serious charges." The defendant responded "that he really screwed up. . . . He indicated to me that he was driving the car and he should not have been driving the car." Brezenski also asked if he had an attorney, and when he indicated that he had one, she told him not to talk to her about the offense any longer. Brezenski informed the assistant district attorney of Bandy's statements.

The defendant claims that his statement was taken in violation of his Sixth Amendment right to counsel.[3] Although he did not explicitly refer to the Sixth Amendment, at a voir

---

[3]The defendant also makes passing reference to art. 12 of the Massachusetts Declaration of Rights. Since he made no argument as to that article within the meaning of Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975), we consider only his Federal constitutional claim.

dire held prior to the admission of the statement and in an "affidavit" accompanying a written motion to disallow the probation officer's testimony, his counsel emphasized the fact that, at the time the statements were made, the defendant had counsel. Assuming, contrary to the Commonwealth's contention, that the objection was properly advanced, and assuming, in addition, that the probation officer was an agent of the police for purposes of the Sixth Amendment,[4] we conclude that there was no error in the admission of the defendant's statements.

The Commonwealth and the defendant differ as to what actions are precluded by the Sixth Amendment.[5] The Commonwealth argues that "a violation occurs when the police act deceptively and with foresight in an effort to obtain incriminating statements from a defendant after the right to counsel has attached"; the defendant, on the other hand, relying on a footnote in the concurring opinion of Justice Powell in *Maine* v. *Moulton*, 474 U.S. 159, 178 n.14 (1985),[6]

---

[4]There is support for the proposition that a probation officer is not, by reason of that status alone, an agent of the police for purposes of the Sixth Amendment. See, e.g., *United States* v. *Jackson*, 886 F.2d 838, 844 (7th Cir. 1989) (probation officer is an extension of the court and not an agent of the government); *State* v. *Nations*, 319 N.C. 318, 320-321, 324-325 (1987) (social services worker); *State* v. *Buchholz*, 97 Or. App. 221, 224-226 (1989) (juvenile parole officer). Cf. *State* v. *Johnson*, 87 S.D. 43, 46 (1972) (probation officer not law enforcement officer for purposes of Miranda). Contra *United States* v. *Deaton*, 468 F.2d 541, 544 (5th Cir. 1972) (parole officer has to give Miranda warnings). Some decisions look to the statutory powers of officers. See, e.g., *State* v. *Bey*, 258 N.J. Super. 451, 467 (App. Div. 1992) (where statute granted full police status to corrections officer, officer was law enforcement agent).

General Laws c. 276, § 90, inserted by St. 1938, c. 174, § 3, provides, in pertinent part, that a "probation officer shall not be an active member of the regular police force, but so far as necessary in the performance of his official duties shall, except as otherwise provided, have all the powers of a police officer . . . ."

[5]The quotations attributed to the Commonwealth and the defendant, respectively, appear in supplementary letters to the panel after oral argument.

[6]The relevant portion of the footnote states:

"The Sixth Amendment protects the right of the accused not to be confronted by an agent of the State regarding matters as to which the right to counsel has attached without counsel being present. This

claims that his rights were "violated when the probation officer went beyond the scope of her duties and engaged [him] in conversation about the charges pending against him."

Under the relevant Supreme Court cases,[7] in order to make out a violation of the Sixth Amendment, there has to be more than bumbling by agents of the police. See *United States v. Henry*, 447 U.S. 264, 274-275 (1979). "Rather, the defendant must demonstrate that the police . . . took some action . . . that was designed deliberately to elicit incriminating remarks," *Kuhlmann v. Wilson*, 447 U.S. 436, 459 (1986), or that they "knowing[ly] exploit[ed] . . . an opportunity to confront the accused without counsel being pres-

---

right was violated as soon as the State's agent engaged Moulton in conversation about the charges pending against him." *Maine v. Moulton*, 474 U.S. at 178 n.14.

[7] The leading cases are *Massiah v. United States*, 377 U.S. 201 (1964); *Brewer v. Williams*, 430 U.S. 387 (1977); *United States v. Henry*, 447 U.S. 264 (1980); *Maine v. Moulton*, 474 U.S. 159 (1985); and *Kuhlmann v. Wilson*, 477 U.S. 436 (1986). *Massiah*, at 206, held "the petitioner was denied the basic protections of [the Sixth Amendment] guarantee when there was used against him at his trial evidence of his own incriminating words, which Federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." In *Brewer v. Williams*, 430 U.S. at 399 ("Christian burial speech" made to defendant in absence of counsel), the Court found a violation because the detective "deliberately and designedly set out to elicit information from Williams just as surely as — and perhaps more effectively than — if he had formally interrogated him." The violation in *United States v. Henry*, 447 U.S. at 274, was occasioned by the government "intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel." In *Maine v. Moulton*, 474 U.S. at 176, the Court held that "the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." In *Kuhlmann v. Wilson*, 477 U.S. at 459, the Court, quoting from *Maine v. Moulton*, 474 U.S. at 176, stated that since " 'the Sixth Amendment is not violated whenever — by luck or by happenstance — the State obtains incriminating statements from the accused after the right to counsel has attached,' . . . a defendant does not make out a violation of that right simply by showing that an informant [or an agent of the police], either through prior arrangement or voluntarily, reported his incriminating statements to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks."

ent." *Maine* v. *Moulton*, 474 U.S. at 176. By failing to show
that Brezenski's comment was other than inadvertent, the de-
fendant has not shown a violation of the Sixth Amendment.
See *Hall* v. *State*, 147 Md. App. 590, 595-596 (1981), aff'd,
292 Md. 683, 689 (1982).

3. *Rulings concerning medical records of Patrick Morris.*
At trial, defense counsel sought to introduce a single page of
Morris's medical records. Morris, it will be remembered, was
the driver of the other vehicle. During the trial, he testified
that he had had nothing to drink on the day of the collision.
The page that counsel wished to admit contained, after the
printed words "Substance Abuse/E to H:" a notation in
handwriting: "ETOH level 85."

Pointing out that there was no explanation as to the mean-
ing of "level 85," the judge indicated he would reserve deci-
sion on the question of the document's admission. After as-
certaining that the nurses who had previously testified were
still available, the judge asked the attorneys to review the
item with one of the nurses to explain the notation. Defense
counsel said, "Okay," a recess was taken, and, thereafter, no
mention of the nurse was made and defense counsel put the
defendant on the stand.

The next morning, defense counsel again attempted to in-
troduce the page of the medical record to show that Morris
had been drinking. He claimed that the evidence was rele-
vant not only to Morris's credibility but also to the cause of
the accident, that is, Morris may have veered into Bandy's
vehicle while under the influence. The judge noted that on
another sheet of the same medical record, next to the num-
ber "85" appeared the words "none detected MG/DL." Rul-
ing that the document sought to be admitted was ambiguous,
the judge refused the defendant's request in the absence of
any evidence explaining the apparent ambiguity. Counsel
asked for an hour continuance to obtain an expert. The judge
denied the continuance on the ground that counsel was aware
on the preceding evening that the issue was the ambiguity of
the report and that the Commonwealth's position had been
that some sort of explanation was necessary.

The decision whether to grant a continuance rests in the sound discretion of the trial judge and will not be disturbed unless there is a patent abuse of that discretion. *Commonwealth* v. *Bryer*, 398 Mass. 9, 15 (1986). There was no such abuse here. The trial judge could properly consider the ambiguity which the words "none detected" created, as well as the Commonwealth's contention that the reference to a blood serum test on the record required an expert to mathematically convert the figure to the statutory blood alcohol scale. See *Commonwealth* v. *Dube*, 413 Mass. 570, 571 n.2 (1992); *Commonwealth* v. *Sargent*, 24 Mass. App. Ct. 657, 659 (1987). The defendant had been on notice the day before that an expert would probably be required, and also had had an opportunity to consult with the nurses. The argument that the defendant was surprised by the medical records is unconvincing as he was aware from the time of the accident that Morris had been hospitalized and could have made greater efforts to obtain the records at an earlier date. See *Commonwealth* v. *Russo*, 30 Mass. App. Ct. 923, 926 (1991).[8]

4. *Remaining contentions.* The defendant argues that statements made by him to two nurses a month after the accident, shortly after he was served with a citation listing the three charges against him, should have been admitted as "spontaneous utterances." He told the nurses that he had not been driving the vehicle that night, rather, that his friend had been driving. The judge acted within his discretion in

---

[8]The medical record (which was attached to the motion for a required finding of not guilty or, in the alternative, for a new trial) also contained the notation, "Upon admission he (Patrick Morris) had a detectable alcohol level which was not in the toxic range." The defendant did not bring this portion of the medical record to the judge's attention during the trial; he did not seek to introduce it and did not specifically mention it in the motion for a new trial. Although defense counsel did not have the records for an extended period of time, this was his own doing. Moreover, counsel had sufficient time prior to the judge's ruling to acquaint himself with the relevant pages. The defendant has not made a separate argument within the meaning of Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975), that the judge should have allowed his motion for a new trial, but urges that the denial of the continuance was an abuse of discretion because of the additional pages referred to in that motion.

excluding these self-serving statements. See *Commonwealth v. Brown*, 413 Mass. 693, 696 (1992). He could determine that, because of the month that had passed between the accident and the time the defendant was served with the citations, the defendant had no doubt learned of Besse's death and that the statements were not "spontaneous to a degree which reasonably negated premeditation or possible fabrication . . . ." *Id.* at 695, quoting from *Blake* v. *Springfield St. Ry.*, 6 Mass. App. Ct. 553, 556 (1978).

The defendant sought to elicit the prior convictions of a defense witness during direct examination. The judge would not allow him to do so. As the Commonwealth concedes, the judge erred in viewing that attempt as an effort by the defendant to impeach his own witness. "[T]he question of who will offer a criminal record is one of the order of proof which is to be determined by the trial judge in the exercise of his discretion." *Commonwealth* v. *Coviello*, 378 Mass. 530, 533 (1979), quoting from *Commonwealth* v. *Coviello*, 7 Mass. App. Ct. 21, 25 (1979). It was error to deny the defendant access to the exercise of such discretion. As in *Coviello*, 378 Mass. at 533-534, the error was not so grave as to require reversal, in view of the substantial evidence in the record supporting the jury's verdicts. "The real venom . . . , the obstinate fact of the prior convictions, could not be neutralized by the anticipatory tactic." *Id.* at 534.

*Judgments affirmed.*

*Order denying motion for new trial affirmed.*