## COMMONWEALTH *vs.* WILLIAM PAVAO.

No. 97-P-1336.

Bristol. November 19, 1998. - February 2, 1999.

Present: WARNER, C.J., BROWN, & LENK, JJ.

*Constitutional Law,* Admissions and confessions, Assistance of counsel. *Evidence,* Admissions and confessions, Voluntariness of statement. *Practice, Criminal,* Admissions and confessions, Voluntariness of statement, Assistance of counsel.

At the trial of a criminal case, where the evidence that the defendant had consumed alcohol and been injured in a fight did not raise a substantial claim of involuntariness of his statements to police two hours after the alleged incident, the judge was not required, on his own motion, to conduct a voir dire on voluntariness or to instruct the jury on the humane practice rule [273-276]; and defense counsel's failure to raise the issue of voluntariness or request a jury instruction did not amount to ineffective assistance of counsel where it would have been a futile tactic [276-278].

INDICTMENT found and returned in the Superior Court Department on December 30, 1987.

Following review by this court, 34 Mass. App. Ct. 577 (1993), the case was tried before *Walter E. Steele,* J.

*Peter M. Onek,* Committee for Public Counsel Services, for the defendant.

*Shaun S. McLean,* Special Assistant District Attorney, for the Commonwealth.

WARNER, C.J. On January 19, 1989, the defendant was convicted by a Superior Court jury of second degree murder. That conviction was subsequently reversed, on the ground that the prosecutor materially misstated the evidence. See *Commonwealth* v. *Pavao,* 34 Mass. App. Ct. 577, 577 (1993). On retrial, the defendant was convicted of manslaughter and sentenced to not less than fifteen nor more than twenty years at Massachusetts Correctional Institution at Cedar Junction. The defendant now claims that the judge incorrectly failed to conduct

a voir dire on the voluntariness of the defendant's statements to the police, that the judge failed to give a "humane practice" instruction, and that the defendant's trial counsel was ineffective for not requesting either of the above procedures.

The evidence was as follows. On December 19, 1987, the defendant, William Pavao, and the victim, James Barboza, separately went to the Sportsman's II lounge in Swansea. Shortly after midnight, the defendant and his wife got into an argument. After the defendant walked away, a patron, Steven O'Brien, an acquaintance of the victim, asked the defendant's wife if she was "okay." Thereafter, the defendant and O'Brien exchanged words.

Subsequently, in the foyer of the establishment, the defendant's wife and Kelly Melia, a friend of the victim, attacked each other. The victim intervened, separating the two women. The victim also punched the defendant and his friend Antonio Sousa,[1] knocking down and injuring both. The defendant, Sousa, and another individual then went outside, and the victim returned to the lounge. Outside, the defendant stated, "He's not going to get away with it." There was also testimony that he stated that "I want to get that fucking nigger."[2]

A short time later, the lounge closed and the victim and his friends left the building. The Commonwealth's witnesses testified that the defendant and his friends waited for the victim and lured him to the area near their car. The victim then approached Sousa and kicked him in the chest, whereupon Sousa grabbed the victim's leg, causing the victim to fall to the pavement. The defendant then swung a tree limb at the victim and repeatedly beat the victim with the limb while he was on the ground.

The defense, on the other hand, provided evidence showing that the victim confronted the defendant's friends as they were leaving the club. The victim then tried to kick Sousa, but Sousa blocked the blow. At that point, a crowd was closing in on the defendant, so he swung a tree limb to keep the crowd back. The tree limb then hit the victim at about the time that Sousa yanked the victim's leg and flipped him to the ground, causing him to strike his head on the pavement. As the victim was trying to get up from the ground, the defendant again hit him with the tree limb.

---

[1] For his part in what later transpired, Sousa was tried and convicted of assault and battery.

[2] The defendant is white, while the victim was black.

Approximately two hours after this altercation, the police interviewed the defendant at the hospital. During this questioning, the defendant repeatedly denied that any fight had occurred outside the lounge after the exchange in the foyer.[3] When the police told the defendant that the victim had died, the defendant "ended up crying." The defendant then allowed the police to take samples of some fibers on his clothing and stated "that they were going to be used against him in a trial later on."

1. *Voluntariness of the defendant's statements.* The defendant did not raise any claim at trial that his statements were not voluntarily made. As a result, no voir dire was conducted, nor was any humane practice instruction given. The defendant now argues that the judge, sua sponte, should have conducted a voir dire on the voluntariness of the defendant's statements to the police because they were obtained when he had consumed alcohol, had difficulty articulating his words, and had one or more of his teeth knocked out, which had resulted in loss of blood. The defendant further argues that the prosecutor's questions to the police officer on direct examination regarding the defendant's intoxication, and the judge's instruction to the jury that intoxication can negate the requisite mental state to prove murder all demonstrate that the voluntariness of the statements was a live issue at trial.

"It is well established that due process is violated when a conviction is based, in whole or in part, upon an involuntary confession." *Commonwealth* v. *Brady,* 380 Mass. 44, 48 (1980). However, when, as here, the defendant fails to raise the issue of the voluntariness of his statements, the judge is required, sua sponte, to conduct a voir dire on the question of voluntariness

---

[3]Specifically, the police officer testified that the defendant informed the police officer that "he knew why I was there." The defendant then told the officer that he and his friends had decided to leave the lounge, and, while leaving, "they walked into an area where there was a foyer, and while in the foyer, a fight erupted. . . . Mr. Pavao began to fall backwards as a result of some type of shoving . . . . Once he regained his feet, he said he was able to get a hold of his wife, exit the door, and jump into a waiting vehicle and leave the scene." When asked about the events in the parking lot, the officer testified that the defendant "was adamant about that, saying that once he had gotten knocked down in the foyer and once he was able to regain his feet, even though the tussle was still going on, he was able to get out into the parking lot, again jump into the car, and nothing did occur in the parking lot other than again what happened in the foyer. To the point where he left the exterior door to the point he got in the car, there was nothing that — there was nothing that transpired."

only when "evidence of 'a substantial claim of involuntariness' is produced." *Commonwealth* v. *Brady, supra* at 49 (citation omitted). See *Commonwealth* v. *Sheriff*, 425 Mass. 186, 192-193 (1997); *Commonwealth* v. *Bandy*, 38 Mass. App. Ct. 329, 331 (1995). Thus, if the voluntariness of the statements is not a "live issue" at trial, there is no obligation for the judge either to conduct a voir dire, or to instruct the jury on the humane practice rule. See *Commonwealth* v. *Bandy*, 38 Mass. App. Ct. at 331. See also *Commonwealth* v. *Sheriff*, 425 Mass. at 193.

Cases which address whether the voluntariness of a defendant's statements was a live issue at trial consistently have failed to adopt any per se rule that if certain factors are present, voluntariness is a live issue. See *Commonwealth* v. *Bandy*, 38 Mass. App. Ct. at 331 (voluntariness not a live issue where defendant stipulated to blood alcohol level of .14, but not to being intoxicated, and where defendant made statements after being pulled from a burning vehicle which he had been driving and which had crashed but there was no evidence of mental impairment); *Commonwealth* v. *Benoit*, 410 Mass. 506, 514-517 (1991) (testimony that the defendant appeared intoxicated one hour after making the statements, that two hours after the statements he had a blood alcohol level of .292, that the defendant was found bleeding from both wrists shortly after making the statements, and that the defendant suffered from chronic schizophrenia not enough to make the voluntariness of statements the defendant made during a 911 call a live issue at trial, where the defendant's basis for a pretrial motion to suppress was that the voice on the 911 call was not that of the defendant, and where the defendant's theory at trial was that he killed his wife during a psychotic breakdown); *Commonwealth* v. *Brady*, 380 Mass. at 47-53 (evidence of defendant's ingestion of alcohol and drugs, though not of being drunk, questioning by defense attorney of witnesses concerning defendant's alleged intoxication at time of statements, and fact that defendant had a large cut on his head and was "marked up with blood," though no evidence of mental impairment, and defense strategy of stressing alibi insufficient to trigger judge's sua sponte inquiry). Compare *Commonwealth* v. *Harris*, 371 Mass. 462 (1976) (duty to conduct a voir dire triggered by testimony from the defendant that he had been beaten by the police until he confessed); *Commonwealth* v. *Hooper*, 42 Mass. App. Ct. 730, 732-734 (1997) (error for judge not to grant defense counsel's request for

humane practice instruction, since voluntariness was a live issue in that during summation, defense counsel urged the jury to disregard the defendant's statement in light of the defendant's impaired state, and the judge specifically referred to the statement in his consciousness of guilt instruction).

Although it is clear in the present case that the defendant consumed alcohol, "mere evidence of alcohol consumption does not by itself trigger a trial judge's 'obligation to inquire into the voluntariness of an admission or confession absent a defendant's objection.' " *Commonwealth* v. *Bandy*, 38 Mass. App. Ct. at 331, quoting from *Commonwealth* v. *Brady*, 380 Mass. at 49. There is little evidence that the defendant was actually intoxicated at the time he made the subject statements to the police. The defendant stated that he had consumed approximately four to five beers over a six-hour time span.[4] However, according to the police who questioned him, the defendant did not appear to be under the influence of alcohol. The officer testified that the defendant appeared to be slurring his words due only to the fact that his lip was swollen. This evidence falls short of the "affirmative," "credible" evidence of involuntariness which is required to trigger a sua sponte voir dire. *Commonwealth* v. *Harris*, 371 Mass. at 471 n.3 & 472. *Commonwealth* v. *Brady*, 380 Mass. at 50.

Similarly, although the defendant had one or more of his teeth knocked out, and as a result had lost some blood, "the record is devoid of any evidence that the defendant suffered any ill effects from the injury or that it in any way impaired his mental functioning." *Id.* at 51. Thus, the fact that the defendant had suffered an injury did not transform the voluntariness of his statements into a live issue at trial.

Further, the mere fact that the prosecutor questioned the police officer on the issue of the defendant's apparent sobriety does not mean that there was any genuine issue as to the voluntariness of the statements. Questions by a prosecutor are not evidence, *Commonwealth* v. *Pina*, 406 Mass. 540, 548, cert. denied, 498 U.S. 832 (1990), and the judge was not required to manufacture an issue based on speculation as to an attorney's motives.

The defendant also argues that because the judge instructed

---

[4]There was evidence that the defendant began drinking at approximately 8:30 or 9 P.M.; the defendant was questioned by police at approximately three the next morning.

the jury on intoxication as it can affect mental state, the judge was on notice that the voluntariness of the defendant's statements was at issue. However, the fact that the judge saw fit to instruct the jury on the defendant's mental state at the time of the incident, which took place approximately two hours before the questioning, does not speak to whether the defendant was intoxicated at the time he made statements to the police. Contrast *Commonwealth* v. *Sheriff*, 425 Mass. at 193 (evidence of insanity at time of incident usually raises issue of voluntariness of statements made soon after incident). Given the scarcity of evidence pertaining to the defendant's alleged intoxication, it appears likely that the judge's instruction was given due to a simple abundance of caution.

Finally, the self-serving nature of certain of the defendant's statements to the police belies the defendant's claim that the statements were not made voluntarily. See *Commonwealth* v. *Burke*, 414 Mass. 252, 259 (1993). In sum, the mere presence of factors which could be deemed probative of a lack of voluntariness was not enough to put the judge on alert that voluntariness was a live issue. There was no evidence of a "substantial claim of involuntariness," and there was no error in the judge's failure to hold a voir dire. *Commonwealth* v. *Harris*, 371 Mass. at 470.

2. *Ineffective assistance of counsel.* The defendant also makes an ineffective assistance of counsel claim based upon defense counsel's failure to request a voir dire on voluntariness or a "humane practice" instruction. To support this claim, the defendant points to the testimony from the first trial, as well as this court's summary of facts from that trial,[5] and argues that this evidence notified counsel that the defendant's intoxication might be important in the second trial. Similarly, the defendant asserts that just as counsel had pursued an inference of intoxication to negate malice, he should have pursued a similar inference of intoxication to show involuntariness.

In order to sustain a claim for ineffective assistance of counsel, "a defendant must establish more than mere error or mistake on the part of his counsel. Rather, a defendant must demonstrate a 'serious incompetency, inefficiency, or inattention

---

[5]This court wrote, "[i]t became apparent that — because of the hour, the amount of alcohol that had been consumed, and the atmosphere in general — trouble was imminent." *Commonwealth* v. *Pavao*, 34 Mass. App. Ct. 577, 578 (1993).

of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense.' " *Commonwealth* v. *Egardo*, 426 Mass. 48, 52 (1997), quoting from *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

The defendant's case was based on self-defense and the portrayal of the defendant as an average law-abiding citizen who happened to be attacked by the victim — a young, muscular, and intoxicated "punk."[6] Defense counsel elicited testimony that the victim had knocked down both the defendant and Antonio Sousa with one punch each, breaking Sousa's nose and knocking out some of the defendant's teeth. Testimony that the defendant was so inebriated that hours later he was unable voluntarily to communicate with the police would certainly have tended to undermine this sympathetic portrayal. Moreover, defense counsel used the defendant's tearful reaction upon being told by the police officer that the victim had died as evidence of genuine remorse on the part of the defendant. Thus, the tactics employed by defense counsel may be seen as eminently reasonable.[7]

In any event, there is no danger that any ineffective performance by counsel deprived the defendant of an otherwise available ground of defense. There was unequivocal and uncontradicted testimony from one of the police officers that the defendant was not intoxicated and that he understood every question which the officers asked of him. The only evidence suggesting intoxication concerned events which occurred

---

[6]In his closing, defense counsel argued, "Self defense. Defense of another. Still live here in this country. We still got a right to defend ourselves from the attacks of these punks."

[7]Despite the defendant's assertion to the contrary, it is not clear from the transcript that the defendant requested an intoxication instruction regarding the malice element of second degree murder. Rather, during the judge's charge to the jury, defense counsel, at side bar, sought to distance himself from the intoxication issue, telling the judge, "[o]n several occasions the court has indicated . . . [that] [the defendant] has availed himself of intoxication and/or self defense. . . . Actually, I think more correctly it's the state of the evidence [that] causes the Court to have to give the instruction . . . [r]ather than [the defendant] asking or directing it." In any event, the possibility that defense counsel astutely requested an instruction on a "fallback" theory of intoxication does not mean that he should also have requested a humane practice instruction.

significantly earlier in the evening. Thus, it is highly unlikely that the jury would have found the defendant's statements involuntary, and trial counsel's failure to request a humane practice instruction did not deprive the defendant of an otherwise available ground of defense. "[F]ailing to pursue a futile tactic does not amount to constitutional ineffectiveness." *Commonwealth* v. *Vieux*, 41 Mass. App. Ct. 526, 527 (1996), cert. denied, 520 U.S. 1245 (1997).

*Judgment affirmed.*